[Civil No. 3373.   Filed February 5, 1934.]

[29 Pac. (2d) 475.]

VICTOR ANSON REDEWILL, Plaintiff, v. THE SUPERIOR COURT OF MARICOPA COUNTY and M. T. PHELPS, Judge, Defendants.

Mr. Will E. Ryan, for Plaintiff.

Mr. Renz L. Jennings, Mr. M. L. Ollerton and Mr. Frank H. Lyman, for Defendants.

LOCKWOOD, J.—This is an original proceeding wherein Victor Anson Redewill, hereinafter called petitioner, seeks a writ of prohibition against the superior court of Maricopa county and the Honorable M. T. PHELPS as judge thereof, restraining said judge from the pronouncing of sentence in criminal cause No. 10171, now pending against petitioner in that court.

The facts are not in dispute and may be stated as follows: The criminal case above referred to was one wherein petitioner was charged with failure to provide for his minor child, Victor Gilden Redewill, under the provisions of section 4635, Revised Code 1928. On the fifth day of March, 1930, petitioner pleaded guilty to the charge and the trial court suspended the pronouncing of sentence, making the following order:

"It is therefore ordered, adjudged and decreed according to the statutes of the State of Arizona, in such case made and provided, that the passing of sentence in this cause committing you Victor Anson Redewill, to the State Penitentiary, at Florence, Ari-

zona, be suspended for a term of five (5) years from date, and that you Victor Anson Redewill be placed on probation under the charge and supervision of the Adult Probation Officer of this Court, and that you Victor Anson Redewill shall be permitted to go at large, upon the condition that you pay to the adult probation officer for the use and benefit of your son the amount of fifty dollars per month for the first year, seventy-five dollars per month for the second year, and one hundred dollars per month for the third, fourth and fifth years, or to the end of the sentence for the purpose that this amount will carry this boy over during the period of his education; first payment to be made within thirty days.''

Petitioner complied fully with the above conditions until the 5th of June, 1931, when the following order was made by the trial court:

''It is ordered reducing the amount of monthly payments to be made by the defendant from $75.00 per month to $65.00 per month. Dated June 5th, 1931.''

This order was also complied with until the payment which was due on the fifth day of May, 1933. On May 16, 1933, petitioner moved that the conditions of his probation be vacated, alleging that the minor child referred to in such conditions had reached the age of twenty-one years. When the matter was presented to the trial judge, he denied the motion and stated in effect that if petitioner did not comply with the conditions of suspension of sentence, as above set forth, he would be apprehended and sentence imposed. As a result, petitioner, claiming that the order of the court requiring the payment for the support of his child beyond the majority of such child was void and in excess of its jurisdiction, initiated these proceedings.

The writ of prohibition at the present time is used to prevent an inferior court or tribunal from assuming a jurisdiction with which it is not legally vested

in cases where wrong, damage, and injustice are likely to follow from the action. 22 R. C. L. 4. There has been much question whether the granting or refusal of the writ is discretionary or a matter of right, but it is generally held in modern times that while the writ is a matter of right where there is no other remedy, when there is a remedy by appeal, or otherwise, the granting or refusal of the writ is discretionary with the appellate tribunal. *Smith* v. *Whitney,* 116 U. S. 167, 6 Sup. Ct. 570, 29 L. Ed. 601. This discretion should be used in the interest of justice and when, as in the present case, it appears that unless a writ of prohibition issues the result will be the incarceration of petitioner in the penitentiary where he must remain for several months pending the slow process of an appeal, and if it also appears that the threatened action would be in excess of the jurisdiction of the trial court or an abuse of its discretion, we think that the appellate court may and should grant the writ. *Van Dyke* v. *Superior Court,* 24 Ariz. 508, 211 Pac. 576.

We therefore consider the case on its merits. Section 4635, to a violation of which petitioner pleaded guilty, reads as follows:

"§ 4635. Failure of parent to provide for minor child. A parent who wilfully omits, without lawful excuse, to furnish necessary food, clothing, shelter or medical attendance for his or her minor child is guilty of a felony."

We have previously construed section 249, Penal Code 1913, of which section 4635, *supra,* is a re-enactment, in the case of *Branham* v. *State,* 33 Ariz. 170, 263 Pac. 1, 3, and have stated therein:

"Section 249 makes it the duty of parents of children to care for them in the manner and to the extent therein provided. The duty is specified and enjoined by the provisions of the section. 'It is "to furnish food, clothing, shelter, or medical attendance." Giv-

ing the statute a reasonable construction by applying the rule of necessity, it is apparent that it means the necessary food, clothing, shelter or medical attendance required for the preservation of the health and life of the child.' *People* v. *Pierson* [176 N. Y. 201, 68 N. E. 243, 98 Am. St. Rep. 666, 63 L. R. A. 187], *supra.''*

And it is only for the failure to do this that a parent is liable criminally. It is true that in the same case we stated that the *quantum* or standard of such duty is well set forth in *State* v. *Waller,* 90 Kan. 829, 136 Pac. 215, 216, 49 L. R. A. (N. S.) 588, as follows:

"He is obliged to provide such a place of abode, such furniture, such articles of food, wearing apparel, and use such medicines, medical attention, and nursing, such means for the education of children, and such social protection and opportunity as comport with health, comfort, welfare, and normal living of human beings according to present standards of civilization, considering his own means, earning capacity, and station in life.''

We think, however, that the last statement was too broad when used in reference to the requirements of section 249, *supra.* In the case of *State* v. *Waller,* the Kansas statute (Laws 1911, chap. 163, § 1) reads that "any parent who shall, without lawful excuse, desert or neglect or refuse to provide for the support and maintenance of his or her child or children . . . '' shall be guilty of a crime. The language is "support and maintenance'' without specifying what should be included therein, and the court held in substance that the words referred to the duty imposed on a parent by the common law. It will be noted, however, the language of our statute does not use either the words "support'' or "maintenance,'' or any synonym thereof, but specifies certain items necessary for the physical well-being of the child alone, without any reference to those required for its mental and moral

development. We think the rule of *expressio unius est exclusio alterius* applies, especially since this is a penal statute, and that it is not a violation of the section for a parent to refuse to educate his minor child, or to decline to render any assistance to one who has reached its majority, although he is liable civilly in the one case, and may rightly be subject to severe censure by society in the other. Such being the case, we hold that so long as petitioner provided the things required for physical maintenance, as set forth in the statute, he was not guilty of a violation thereof, no matter how derelict he might be in the moral and common-law duty imposed upon him to provide for the mental and moral development of his child in accordance with his circumstances in life.

There are two sections of the Code providing for the suspension of sentence. The first is section 4637, which uses the following language:

"§ 4637. Bond by husband; suspending proceedings. After arrest, conviction, or plea of guilty under either of the two preceding sections, and before sentence, if the defendant shall enter into an undertaking with sureties to the state of Arizona in such penal sum as the court may fix and approve, conditioned that the defendant will furnish said minor child or wife, with necessary food, clothing, shelter or medical attendance, the court may suspend proceedings or sentence thereon. Said undertaking shall be valid and binding for one year, and upon the failure of the defendant to comply with said undertaking, he may be ordered to appear before the court and show cause why further proceedings should not be had in said action, or sentence imposed; whereupon the court may proceed with said action or pass sentence, or may modify the order and take a new undertaking and further suspend proceedings or sentence for a like period."

The second is section 5105, which reads as follows:

"§ 5105. Suspending judgment; revocation; pronouncing judgment; discharge. After plea or verdict

of guilty, where discretion is conferred upon the court as to the extent of the punishment, the court, upon oral suggestions of either party that there are circumstances in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily at a specified time and upon such notice to the adverse party as it may direct. If it shall appear that there are circumstances in mitigation of the punishment, or that the ends of justice will be subserved thereby, the court shall have power, in its discretion, to place the defendant upon probation in the manner following: 1. The court, judge or justice thereof, may suspend the imposing of sentence and may direct that such suspension may continue for such period of time, not exceeding the maximum term of sentence, which may be imposed, and upon such terms and conditions as it shall determine, and shall place such person on probation, under the charge and supervision of the probation officer of said court during such suspension. . . .

"At any time during the probationary term of the person released on probation, any probation officer may, without warrant or other process, at any time until the final disposition of the case, re-arrest any person so placed in his care and bring him before the court, or the court may, in its discretion, issue a warrant for the re-arrest of any such person and may thereupon revoke and terminate such probation, if the interest of justice so requires, and if the court, in its judgment shall have reason to believe that the person so placed upon probation is violating the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates, or a vicious life. Upon such revocation and termination, the court may, if the sentence has been suspended, pronounce judgment at any time after the said suspension of the sentence within the longest period for which the defendant might have been sentenced, but if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke such suspension, whereupon the judgment shall be in full force and effect, and the person shall

be delivered over to the proper officer to serve his sentence.

"The court may at any time during the period of probation revoke or modify its order of suspension of imposition or execution of sentence. It may, at any time, when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation and discharge the person so held, and in all cases, if the court has not seen fit to revoke the order of probation and impose sentence or pronounce judgment, the defendant shall, at the end of the term of probation, be by the court discharged."

The petitioner claims that one convicted under section 4635 may have the pronouncing of sentence suspended only under section 4637, and that section 5105 has no application to such an offense. Respondent's position is that he had the jurisdiction to proceed under either section and acted under the latter. It is not contended that the bond required under section 4637 was ever given or even offered. It would appear therefore that if petitioner is correct in his claim that section 4637 is the only one under which respondent could suspend the sentence, since the condition set forth therein is one precedent and was never fulfilled, the suspension itself is void and it is the imperative duty of respondent to do what under such a view of the law he should have done long since—sentence the petitioner forthwith. We think, however, that the disastrous result which would necessarily fall on petitioner, if we adopt his view of the section applicable to his case, is averted by the true rule.

It is the general rule of construction that where there is a general statute dealing with a subject in comprehensive terms and another dealing with a part of the same subject in a more minute and definite manner, the two should be read together and har-

monized if possible, so as to give full effect to the legislative intent. *Gideon* v. *St. Charles*, 16 Ariz. 435, 146 Pac. 925; *Arizona Eastern R. Co.* v. *Matthews*, 20 Ariz. 282, 180 Pac. 159, 7 A. L. R. 1149; 59 C. J. 1056. There are two possible constructions under the circumstances which will harmonize the two sections. We may hold section 4637 takes section 4635 out of the jurisdiction granted the court over all other offenses by section 5105, or we may hold that it provides merely that when the trial judge desires to use the condition set forth therein he shall require no other, but that if he does not wish to extend leniency on those terms he may use the powers granted him by section 5105.

We think the latter construction is more in harmony with the general policy of our law. It is not reasonable to suppose that the legislature intended to grant such broad powers to suspend sentence over all other crimes as it gave in section 5105, and meant to single out the crime set up in section 4635 as subject to so harsh a rule as that which petitioner's contention would require. Under that contention, no matter what it seemed the ends of justice might require, an inability to give the statutory bond would doom the offender to a sentence of a felony. Suppose a defendant, who had failed to support his child when he was amply able to do so and was justly convicted under section 4635, had during the trial lost his property and income, and was unable to induce anyone to go on his bond, yet the trial judge was fully convinced the offender was truly penitent and could and would, if the pronouncing of sentence were suspended, shortly secure a job and do his full duty to his child, must he refuse the leniency he is permitted to extend to every other crime because the defendant cannot do the impossible? We cannot believe the legislature so intended. We hold, therefore,

that the trial judge may act under either section when section 4635 has been violated.

We consider, then, whether the conditions imposed by the trial judge were within his jurisdiction under the provisions of section 5105. The language of the section on this point is indeed broad:

"The court shall have power, in its discretion, . . . and upon such terms and conditions as it shall determine."

But broad as it is, there is a limit. When a court is given discretion in the exercise of a power, it is a judicial, and not an arbitrary or even a moral, discretion which is implied. And since one of the principal tests, if not the vital one, of that discretion, is the purpose for which the power was conferred, in granting probation for an offense the court should make the "terms and conditions" thereof conform to the legislative wish if there be one apparent. Let us then consider the cause for the recent introduction into the law of the statutory suspension of sentence and the result sought to be accomplished thereby, as declared by the legislature, both for offenses in general and in particular. In early society the purpose back of punishment for crime was primarily reparation to the injured party or his family, either by some satisfaction of the feeling of resentment and desire for vengeance under the *lex talionis,* as evidenced by the old adage of "an eye for an eye and a tooth for a tooth," or the payment of pecuniary damages, such as the wergild in the early Teutonic tribes. The intent of the offender was rarely considered, but only the result of his acts, and such government as existed paid little attention to many crimes, except as they involved a breach of the public peace, leaving the infliction of punishment, or at least the initiation of procedure therefor, to the injured party. But modern civilization takes an entirely different view of the

subject. Our theory is that punishment as such is never to be inflicted through mere motives of vengeance, public or private, but only for the protection of society against further crime, or reparation for the damage done. Any law which will accomplish either of these purposes fits in with modern legislation. One which does not tend toward such a result has no place therein. The comparatively recent enactment of laws providing for the suspension of sentence can only be justified on the theory that society can at times be adequately protected and proper reparation made without the infliction of the full legal penalty. Our statutes say that as a preliminary to the suspension of sentence it must appear "that there are circumstances in mitigation of the punishment, or that the ends of justice will be subserved thereby." Such being the purpose of the suspended sentence, it is apparent that any conditions annexed thereto which do not have some bearing on the protection of society against future crimes, either by the offender or others, or reparation by the former for the injury he has caused, are contrary to the fundamental principles of modern criminal jurisprudence and the purpose of the suspended sentence. And in determining whether conditions imposed violate these principles we should always remember one thing which we are prone to forget under strong or sudden appeals to the emotions. It is not either the duty or the right of the courts to establish general rules of moral conduct or to enforce such rules where a failure to observe them is not a violation of the law. It is the legal and not the moral aspect of the situation which is for the consideration of the court. We are therefore of the opinion that any condition imposed under the statutes allowing the suspension of sentence must be one which has some reasonable bearing upon the prevention of a future crime by either the offender or some other person, or upon reparation by

the offender for the injury which he has caused by the particular offense already committed.

As to most crimes the legislature has not indicated any particular limitations upon the sound discretion of the court as to the terms and conditions it may impose on one released on probation, and so long as these terms bear some reasonable relation to the purposes of punishment just stated they should be upheld; but when the legislature has indicated clearly and directly a specific act which it considers legal reparation for the injury resulting from a crime, the court should cause any condition intended to compel the defendant to make reparation as distinct from one tending to prevent other crimes to conform with the intention of the legislature. In this case this intent is clearly indicated by the provisions of section 4637, which immediately follows the sections which define the crime for which the defendant was convicted, as follows:

"If the defendant shall enter into an undertaking with sureties . . . conditioned that the defendant will furnish said *minor* child . . . with necessary food, clothing, shelter or medical attendance, the court may suspend proceedings of sentence thereon." (Italics ours.)

While, as we have held, the court is not limited to the suspension of sentence to imposing only as a condition precedent to the suspension of sentence that such bond shall be furnished, nevertheless the conditions which it does impose in such a case, aside from those which may tend to restrain the commission of further crime, should be such as to compel defendant to fulfill the particular duty which he has violated or to make reparation for any failure to do so. The condition imposed by the trial court was in effect that defendant should support and educate his child for some three years after he reached his majority. We can conceive of no way in which this condition,

imposing a duty not required by law, would in the slightest degree tend to prevent defendant or others from committing any crime like or unlike that of which defendant was convicted, except in so far as any onerous penalty imposed might cause a person to avoid doing something which caused its imposition. But this would be the substitution by the court of a *punishment* determined by it for that fixed by the legislature, and not the suspension of punishment. Nor has the condition any bearing on the reparation indicated by the legislature for the injury done by the crime already committed. His duty was to furnish the minor child certain things of pecuniary value during his minority. These things, in so far as he failed to furnish them and the child received them at all, must have been furnished by others. Had the court required as one of the conditions for the suspension of sentence that the defendant pay to the guardian of the child, or whoever had furnished that support, the cost incurred by them in performing the duty which he had failed to perform, it might perhaps be reasonably said that it was partial reparation for the injury caused by his crime. But such was not the order of the court. It was that he should make payment for a different purpose and for something not required by law, or within the power of a court to compel, for a court may require a parent to support his *minor* child, but not one who has reached his majority.

We believe as men that it is the moral duty of every parent to guide, protect and assist his children in every possible manner consistent with his ability and his judgment as to the wisdom of the assistance needed or asked, throughout his entire life. It is to the credit of human nature that the vast majority of parents do this without any suggestion from outside or any thought that they are doing more than is required of them, but when it comes to enforcing such

conduct on the part of the small minority who do not voluntarily follow it, the courts cannot go beyond the legal code, no matter what the requirements of the moral code, particularly when the legislature itself has indicated the object to be obtained by the statute which has been violated.

We are reluctant indeed to interfere with the discretion exercised by the trial court in imposing conditions on a suspension of a sentence, and shall uphold any such conditions which on any reasonable theory tend to cause a defendant to make reparation for any crime which he may have committed, or to restrain him or others from the commission in the future of other crimes; but where the condition has no bearing on either of these two matters, but relates only to a future moral and not legal obligation, we think it is an abuse of the discretion vested in the trial court to fix such condition in the first place, or to revoke the suspension of sentence theretofore granted for no other reason than a failure on the part of defendant to fulfill the illegal condition. It is urged that since the trial court might have imposed a condition which would have been equal to or greater than the one which actually was imposed, the latter should be sustained. It may be that in merchandising it is permissible for the merchant to substitute something "just as good" for the article asked for, but it is not so in law. A court cannot do something not authorized by law, because it may think it is "just as good," or even better than the thing which the law does sanction. Because of the fact that there was no legal duty upon petitioner to contribute in any manner to the support of his child after he reached his majority, and because a condition requiring the petitioner to do so is, in our opinion, not reasonably calculated to prevent future crime of any nature by anyone, and because the legislature has indicated clearly what should be considered repara-

tion for the particular offense to which he plead guilty, we are of the opinion that the trial court exceeded its jurisdiction in the condition imposed by it, so far as the payments required thereby were for education or support extending beyond the majority of the child. For the foregoing reasons the writ of prohibition is made permanent.

ROSS, C. J., concurs.

McALISTER, J., Dissenting.—I am unable to concur in the conclusion reached by my colleagues and will state as briefly as possible why.

In so far as their opinion holds that in suspending the imposition of sentence upon a parent who has plead guilty to or been convicted of a violation of section 4635, Revised Code of 1928, that is, for failure to provide for a minor child, the court may, in the exercise of its discretion, proceed either under section 4637, Revised Code of 1928, or under the general suspension statute, section 5105, I think it correct; but to the extent that it compels the trial court to look to section 4637, or to any other provision of law prescribing a legal duty on the part of defendant, for the conditions it may fix upon the suspending of sentence under section 5105, I am unable to accept it. Such a construction practically destroys the effect of the holding that the court has the discretion to proceed under either section.

If the expression in the latter section, "the court, judge or justice thereof, may suspend the imposing of sentence . . . *upon such terms and conditions as it shall determine,*" notwithstanding its all-inclusive character, must be so construed as to restrict the court in determining what conditions it may impose in case of a violation of section 4635 to the selection of acts some other provision or principle of law already makes it the duty of the defendant to per-

form, there is no reason for its existence so far as a violation of section 4635 is concerned. If the trial court must be governed by section 4637 in imposing conditions in such a case, the same reasoning would restrict it to requiring the defendant, not merely to provide the necessary "food, clothing, shelter or medical attendance" for his child during his minority, but also to enter into an undertaking with sureties conditioned that he will do so. There is no reason, since the court must look to that section for conditions to impose, or at least for limitations of its action in this respect, why it should be required, or even permitted, to select or impose only a part of those it prescribes and not the others, inasmuch as the theory upon which the trial court's power under section 5105 is so greatly circumscribed is that the legislature has indicated in that section upon what terms and conditions the imposition of sentence for a violation of section 4635 should be suspended.

The legislature has, it is true, authorized the court in section 4637 to suspend sentence after conviction or plea of guilty to a violation of section 4635, but it made such action dependent upon the condition that he enter into an undertaking with sureties to furnish his minor child with necessities, and it would seem clear that requiring a bond to compel this for the period of minority as a condition precedent to the suspension of sentence could have no bearing whatever upon the power the legislature conferred upon the trial court in another section, 5105, to suspend the imposition of sentence, not upon the giving of a bond like the one provided for in section 4637 but upon such terms and conditions as it should determine. Neither does the fact that the legal duty of a parent to take care of its child extends only to the age of twenty-one years affect the jurisdiction of the court to fix as a condition of suspension that he continue such help beyond that period if the circum-

stances are such as reasonably to warrant it. There is certainly no provision of law that makes it unlawful or against public policy for him to furnish such help, or to perform any other worthy act.

To construe the expression, "upon such terms and conditions as it may determine," to mean a grant of power no greater than that prescribed in section 4637 narrows it unnecessarily and to an extent never contemplated. The only limitation the legislature intended to place on the action of the court by this language was, in my judgment, that it impose such terms and conditions as, in view of the situation with which it is called upon to deal, reasonably and fairly fit the circumstances. Whether they constitute acts the law already makes it the duty of the defendant to perform or acts that it does not prohibit but which all good citizens commend and approve is wholly immaterial. Such wide powers were conferred for the specific purpose of enabling the court to look, not merely to the provisions of the statute or general principles of law but to the broad field of experience as well, for terms and conditions of suspension that would best meet the situation. Such has been the procedure of the courts under it since it became a part of the law of the state.

If, then, the facts be considered in the light of the view that in determining the conditions to be imposed the court is restricted, not to what the law—section 4637 or any other provision—makes it the duty of the defendant to do but to what should be held to be reasonably and fairly adapted to the purpose of preventing other crimes or of making reparation for the one already committed, there can be no question but that those fixed in this case aptly meet this requirement. It appears that on March 5, 1930, when the petitioner pleaded guilty to a violation of section 4635, *supra,* and the imposition of sentence was suspended, the son, Victor Gilden, was nearly eighteen

years of age, and that for six years prior thereto the petitioner had entirely, and for several years before that in part, failed to provide him with the necessary food, clothing, shelter and medical attendance; that he had, in addition, so ignored a decree entered in 1919 divorcing him and Maebelle E. Redewill, awarding her the custody of the child and directing him to pay $60 a month for his support, that he was then $4,300 in arrears thereunder, and the decree yet had three years to run. Notwithstanding his dereliction in both these respects, however, the court decided that the "ends of justice will be subserved" by suspending for five years the imposition of a sentence in the state prison and fixed as a condition thereof that he take care of the child's needs and education during that period, or until he reached his majority and for two years beyond, thus making reparation, in part at least, for his failure all these years to fulfill his duty as required by section 4635, *supra.*

This was a proper exercise of the court's discretion, for nothing more practical, more reasonable or more in harmony with the suspended-sentence law could have been thought of or suggested. The conditions imposed did not compel him to make complete amends for his past failure, whether the duty to his child be measured by the requirements of section 4635 or by the sums mentioned in the decree, but merely directed him to pay a reasonable amount monthly during the period of suspension, enough simply to take care of the boy's necessities and enable him to finish school. The sums to be paid for the first three years, or until the boy reached his majority, were merely in discharge of a legal duty, while those for the two years beyond his majority were largely for repairing the injury he had caused by his failure for so many years to provide the boy with the necessities, though the total amount directed to be paid during

this period for this purpose was, after the reduction in June, 1931, at petitioner's request, about $1600, a sum substantially less than the fulfillment of his duty under section 4635 during these many years would have required.

It is difficult to conceive of a condition that could have been imposed that would have borne a more direct relation to the offense to which the petitioner had pleaded guilty and have tended in any fairer way to make some reparation to the mother who for the six or eight years prior to March 5, 1930, had been compelled, because of petitioner's failure to do his duty, to provide the boy with the necessary food, clothing, shelter and medical attendance. It relieved her from the burden of sending him to school for the two years beyond his majority and, hence, clearly had a direct bearing on reparation for his past offense as well as an effect upon further violations of the provisions of section 4635, and this brought it within the purview of the alternatives mentioned in the opinion of the majority that ''any condition imposed under the statutes allowing the suspension of sentence must be one which has some reasonable bearing upon the prevention of a future crime by either the offender or some other person, or upon reparation by the offender for the injury which he has caused by the particular offense already committed.'' The fact that the order directed that the payments be made to the adult probation officer for the ''purpose of carrying the boy over,'' rather than to the mother, detracted in no sense from their character as reparations. Neither did the fact that it permitted the petitioner to pay the $1600 in twenty-four installments after the boy reached twenty-one, instead of requiring its payment in one or more sums before that date, affect its legality in the slightest degree. The moment the court imposed the condition that he pay this sum his obligation to do so became fixed, and it is

immaterial that he was given more than three years, or until after the boy reached his majority, to satisfy it. It was imposed at a time the court had a right to impose it and was to be paid within the period of suspension.

The condition requiring the payment of installments two years beyond the boy's majority had just as much bearing on the question of future violations of the Penal Code in any respect by the petitioner as did that portion of it applying to the three years prior thereto. It was just as reformative in character and particularly applicable in view of petitioner's failure for so many years to provide the necessary "food, clothing, shelter or medical attendance." The fact that the boy would reach his majority within three years from the day the sentence was suspended and the condition imposed, March 5, 1930, in no sense affected the jurisdiction of the court either to sentence petitioner for a term of five years from that date in the state prison, that is, through the two years beyond the boy's majority as well as the three before, or to suspend the imposition of sentence for the same five-year period if it felt the ends of justice would be subserved thereby. And since the court could have extended either the sentence or the suspension thereof beyond the boy's majority it follows that it was within its power in pursuing the latter course to determine that the conditions of suspension should run for the same period of time. The terms or conditions fixed under this provision of the suspended-sentence law are in reality merely substitutes for the penalty the crime itself carries but intended, as they were in this case, to be so much lighter and less severe in character that they are not looked upon as punishment or a penalty, and the power of the court to say what this shall be is unquestioned.

Since, therefore, the conditions of suspension were, in my opinion, within the jurisdiction of the court to impose, the alternative writ of prohibition should be quashed.