566 P.2d 1055

The STATE of Arizona, Appellee,

v.

Frederic Neal GARNER, Appellant.

No. 1 CA–CR 1977.

Court of Appeals of Arizona,
Division 1,
Department C.

July 12, 1977.

Bruce E. Babbitt, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

E. Reid Southern, Phoenix, for appellant.

## OPINION

OGG, Judge.

This appeal challenges the act of the trial court in requiring appellant, as a condition of probation, to make installment payments totaling $6,000 to the victim of the crime.

The record before us shows that appellant discharged an air rifle and that the bullet so discharged struck Everett Deemer and lodged in his neck. The incident occurred while a group of youths, including appellant, were verbally and otherwise abusing Deemer. There are indications in the record that had the shot been a fraction of an inch to either side Deemer would have been killed or paralyzed. As it is, the bullet remains in Deemer's neck because it cannot be safely removed and Deemer is significantly incapacitated.

Appellant was charged in an information with assault with a deadly weapon (ARS § 13–249). He entered a plea of not guilty to that offense. Appellant subsequently waived his right to a trial by jury and his case was submitted to the trial court for decision on the police departmental report and what apparently may have been an understanding that the charge would be amended to aggravated battery, open end (ARS § 13–245). The trial court immedi-ately found appellant guilty of the latter crime and the case was set for sentencing before another judge. The sentencing judge placed appellant on probation for five years and required him to pay $6,000 to Deemer at the rate of $125 per month until paid in full. The only monetary damage referred to in the record before us is the sum of $2,600 which an insurance company had paid to Deemer for medical expenses at the time of the presentence report. The probation officer recommended in the probation report that appellant be required to repay the sum of $1,800 to the insurance company.

The Arizona Supreme Court first addressed the question of reparations in the case of *Redewill v. Superior Court,* 43 Ariz. 68, 29 P.2d 475 (1934). The court held that our probation statute authorized imposition of restitution or reparations as a condition of probation.

After *Redewill* the supreme court next dealt extensively with the subject of restitution or reparations as a condition of probation in *Shenah v. Henderson,* 106 Ariz. 399, 476 P.2d 854 (1970). In *Shenah,* the court rejected the convicted petitioner's belated attack on the condition of probation requiring him to pay $2,500 beyond that payable under an automobile insurance policy to the parents of the deceased victim. After alluding to the necessity of exercising an informed discretion in such matters, the court held in essence that the trial court had sufficient information before it to arrive at the amount of the reparation and that it was incumbent upon the convicted person to call to the trial court's attention at the mitigation hearing factors relating to the reasonableness of amount and ability to pay.

There is no indication in *Shenah* of the amount of insurance available or whether the reparation bore any relationship to any specific element or elements of resulting loss. Thus, we do not know whether the reparation together with the insurance exceeded exactly calculable damages or what in our civil litigation would be referred to as "special" damages. Language in the

opinion, however, seems susceptible of the inference that the reparation was arbitrarily fixed and that it and the insurance exceeded the readily calculable monetary loss. It seems likely that the opinion would have reflected a contrary showing.

We refer to this aspect of *Shenah* in detail because it has been held in another jurisdiction that a "reparation" should be limited to "liquidated or easily measurable damages." *State v. Stalheim,* 275 Or. 683, 552 P.2d 829 (1976). The Oregon court in so holding cited what it regarded as policy considerations, including the difficulty or impossibility of the trial judge in the criminal case to predict civil damages and the inability of the defendant to have at sentencing the "[B]enefit of defenses such as contributory negligence or assumption of risk . . ." 552 P.2d at 831.

If reparations as a condition of probation are to include elements beyond mere "special damages" we believe a trial court must use great caution. The sentencing phase of a criminal case is not the ideal forum for the disposition of a negligence case. Both parties are deprived of a jury; the defendant may be limited in showing causation or developing a defense of contributory negligence or assumption of risk. As a practical problem a criminal defendant's testimony is somewhat diluted when weighed against that of the victim. Great constitutional problems develop if the amount of reparations is an amount larger than the defendant can pay. When this occurs, and the defendant is later incarcerated for his failure to pay, we have what may be an imprisonment for debt problem. Further complications develop if the victim later brings a civil action against the criminal defendant for damages arising out of the criminal act. Should the amount paid in the criminal court as a condition of probation be deducted from the civil judgment? If the civil judgment is less than the reparations ordered in the criminal case, must the amount of the criminal reparations be adjusted to conform to the amount of the civil judgment?

■ An order requiring payment of reparations should be within the means of the convicted person. This is to be inferred from *Shenah v. Henderson,* supra; see also, Annot. 73 A.L.R.3d 1240 (1976). If reparations were beyond the probationer's means, they could not have a salutary rehabilitative, as well as punitive, effect. See *State v. Harris,* 70 N.J. 586, 362 A.2d 32 (1976), and authorities cited.

■ Under the authority of *Shenah* we conclude that reparations are not necessarily confined to "liquidated," "special," or "easily measurable" damages. See *State v. Gunderson,* 74 Wash.2d 226, 444 P.2d 156 (1968) (like effect but more specific statutory authority). In so holding we do not sanction any concept of the court as a collection agency. Restitution and reparations are constructive tools in the criminal jurisprudence and are to be used as such. *State v. Harris,* supra.

■ Appellant also suggests that restitution or reparations cannot exceed the amount he could have been fined for the offense, in this case $2,000 under ARS § 13-245. A fine is a penal exaction payable to the public treasury and is generically distinct from restitution or reparations fixed as a condition of probation. *State v. Gunderson,* supra.[1]

In regard to procedure, we think the following statement from *People v. Gallagher,* 55 Mich.App. 613, 223 N.W.2d 92 (1974), is in accord with *Shenah v. Henderson,* supra, and *State v. Douglas,* 87 Ariz. 182, 349 P.2d 622 (1960):

> It seems desirable to have the defendant and his lawyer participate in the restitution decision. The matter might be discussed at the time of a plea of guilty. The recommended amount of restitution or reparation and the manner of its payment should be included in the presentence report and disclosed. The court might tell the defendant at the time of conviction that if probation is granted,

1. The thirty-third Legislature has just enacted a revised criminal code to be effective October 1, 1978, which has a specific section 13-1003 dealing with this matter.

restitution may be required, and suggest that he and his lawyer propose a plan for restitution to the presentence investigator. In any event, the court could invite comment from defendant about the restitution the court is considering before it is imposed as a part of the sentence.

55 Mich.App. at 620, 223 N.W.2d at 96.

The record in this case shows that at the time of sentencing the trial judge notified appellant and his attorney that the judge was considering placing appellant on probation under certain terms and conditions. During this procedure the judge, while addressing the appellant stated:

> I have prepared terms of probation. I would like you to sit down with your lawyer at counsel table and go over the terms and tell me whether you want probation on that basis. Go over each of those terms, one by one, until you fully understand them.

The appellant and his attorney retired to the trial table and discussed the terms of probation, returned to the bench and without objection proceeded with the sentencing, which included the term of probation which required the appellant to pay restitution to the victim in the sum of $6,000, payable at the rate of $125 a month. It appears the judge considered appellant's ability to pay when he ordered such payment from the $500 per month salary earned by appellant.

After a review of the transcript we cannot logically distinguish this case from *Shenah*. In both cases the trial court gave the appellant an opportunity to go over the proposed terms of probation. It was then the burden of the appellant "[T]o bring to the attention of the court any factors which might bear upon the reasonableness of any reparation order and any factors which might bear upon petitioner's ability to make reparation." *Shenah v. Henderson*, supra, 106 Ariz. at 401, 476 P.2d at 856. In this case, as in *Shenah*, there was no objection made to the terms of probation at any time in the proceedings.

We find no abuse of discretion under the facts of this case.

Affirmed.

DONOFRIO, J., and JACOBSON, P. J., Department C, concur.