428 A.2d 574

**COMMONWEALTH of Pennsylvania**

v.

**Frederick C. ERB, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed April 3, 1981.

66

Richard A. James, Media, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for bigamy.[1] The lower court fined appellant $5,000 and placed him on two years probation on condition that he make restitution to the complainant. The issue is the court's authority to require restitution. We hold that the court had such authority but was obliged itself to determine the amount of restitution to be paid and the manner of payment, instead of

1. 18 Pa.C.S.A. § 4301.

directing the probation department to make a determination. We shall therefore reverse and remand for further proceedings.

On May 16, 1968, appellant, Frederick C. Erb, a sheetmetal worker, married Eloise James Gutridge in Virginia. On June 4, 1977, while still married, he purported to marry Emma Louise Welsh, the complainant in this case, in Brookhaven, Delaware County, Pennsylvania. Sometime in 1979 Ms. Welsh discovered that appellant was already married, and on June 7, 1979, she filed a private criminal complaint charging him with bigamy.

On October 17, 1979, appellant pleaded guilty to this charge. Ms. Welsh testified at the guilty plea proceeding. She said that appellant had told her his work in Naval Intelligence required him to be away from home sometimes; that in January 1979 he told her he was going on "secret duty" and would have to rent a separate apartment, the location of which he could not disclose, for three months; that sometime later he told her was going to be hospitalized at Hahnemann Hospital for a heart ailment, but not to visit him in the hospital; and that when she went to the hospital anyway, she discovered him with his real wife. N.T. at 12. Ms. Welsh also testified about money she had spent to support appellant, presenting a copy of a document (apparently itemizing these expenses)[2] to the court:

MRS. ERB [in fact, Ms. Welsh]: . . . . Incidentally, he was out of work quite a bit. Any time it happened to him, I worked and I paid the bills. I had quite a few bills.

MR. BERKOWITZ [Ms. Welsh's attorney]: Tell his Honor about it.

MRS. ERB: The total that benefited him directly was five thousand—$5,309.

THE COURT: For what type of items?

MRS. ERB: Well, a lot of this was medical bills, plus payments for his cars and clothing. He had no clothing whatsoever. And when he left in January, he asked me to

2. This document is not part of the record as transmitted to us.

give him $1,500 to set up his own apartment and he said he just needed a scant bit of furniture because it wasn't going to be very long, so I gave him a check for $1,500.

THE COURT: Is that all set forth in that document?

MRS. ERB: Yes.

THE COURT: Would you present that to us, please. N.T. at 13–14.

Appellant's attorney then questioned appellant briefly about his financial contributions to the household:

MR. JAMES [appellant's attorney]: If the Court please, I would just have Mr. Erb indicate that during this period of time, if you would, tell us when you were working and what if anything you did with your paycheck?

MR. ERB: Your Honor, from the pay period of June 4, 1977 until the pay date of January 19, 1979, I gave Emma Louise every one of my paychecks with the exception of one.

MR. JAMES: How much was your weekly bring-home pay?

MR. ERB: This averaged anywhere from $280 to $281 depending on the particular tax deductions of that week.

MR. JAMES: This was done from the time you were married until the time you separated?

MR. ERB: From June 4th of '77 until approximately January 19, 1979.

Now, insofar as clothing, repairs to my clothing, the majority of these were charged to Visa and I made out the monthly checks, from our dual or joint check account.

Now, Eloise—Emma Louise—(Laughter)—handled all the banking. I gave her my paycheck. With every paycheck she made all deposits and I frankly and honestly don't even know what bank it was in or where it is located. I know it is located in the area of Haverford Hospital and she would make these deposits on her way to or from work. I have never been in this bank.

THE COURT: All right. Anything further?

MR. JAMES: Nothing, your Honor.

N.T. at 16–17.

The lower court then stated that it would schedule a sentencing hearing after it had received a report of a pre-sentencing investigation. N.T. at 17.

The sentencing hearing was on November 28, 1979. Appellant's attorney spoke about appellant's background and personal history. He then stated that appellant objected to any order of restitution to Ms. Welsh:

> As far as the restitution goes, we feel we have not been supplied with sufficient information to contest this, that all these statements and all the information provided by Mrs. Welsh through her attorney indicate only the expenses that were specified for Mr. Erb himself during the period of time, the period from June 4, 1977 until Mr. Erb left in January of this year. He was fully employed with the Boeing Vertol Company. And even if we take the statements that Mrs. Welsh says that she returned to him approximately $100 per week, which we still contest, it still leaves the sum of approximately $150 per week which was turned over by Mr. Erb to Mrs. Welsh.

N.T. at 9.

The attorney continued:

> MR. JAMES: If I may, before the victim does speak, your Honor, as far as making the victim whole, all that is brought to our attention is that Mrs. Welsh has been caused to expend certain sums. We have asked and have not been provided copies of the amounts that Mrs. Welsh had in her checking account and savings account prior to the marriage and the time when Mr. Erb has left. We are just faced with the argument and the assumptions that this woman is now in a less financial status or situation or position than she was on June 4th. And I think that is unsubstantiated. And we have a client here who was working the whole time and contributing his weekly income to the operation, the daily expenses and the running of a household. And I think that should be taken into consideration.

N.T. at 11.

Ms. Welsh again testified about her contributions, financial and otherwise:

LOUISE WELSH: We lived together a year and a half. And I lived with him thinking that I was his wife, and he was my devoted husband. And I cooked for him. I cleaned the house. I did everything. I washed and ironed. And I worked.. Now, I think this crime to me is worse than a murder or a mugging or even a robbery because you can replace material things. But you cannot replace your affections. And I have been, you know, really in a state since this thing has happened.

Now, about the money. He didn't work steadily. Whenever he decided he wanted to take a day off, all you have to do is subpoena his work records, he did. And he didn't get paid when he didn't work. He depended on my salary coming in. The money that was spent that I have here for you to look at are payments that went directly for his benefit, payments on his car, medical expenses, payments on his children for Christmas. These are what these checks entail.

MR. BERKOWITZ: How much is the total of the checks?

LOUISE WELSH: I have the total.

THE COURT: I think I have it.

MR. BERKOWITZ: She has the originals.

LOUISE WELSH: Whether or not I am in a worse financial state than I was before I met him, I think is irrelevant. The point was that our money, my money that I had, I used for him when we were married as any wife would. There was no question of which is yours and which is mine, except that I am telling you what went directly to him.

N.T. at 14–15.

Appellant's attorney renewed his objection to an order of restitution:

MR. JAMES: If I might, your Honor, we do have copies of Mr. Erb's wage earnings for the year 1977, 1978 and the two-week period that they resided together in 1979. The

total income shown on this is $21,605.00. That is the net—excuse me. That is the gross figure. So I don't mean to imply to the Court that all this money was put in the account. But Mr. Erb was earning after taxes on an average basis of approximately $250 per week.

THE COURT: May I have Mrs. Welsh's statement? I know I had mine this morning. I know I looked it over prior to coming to court. But I don't have it now.

MR. BERKOWITZ: We have it right here, your Honor, the original letter and the collection of checks. And there are two letters, and the checks themselves, your Honor.

THE COURT: Hand them all up please.

MR. GROSS [assistant district attorney]: Your Honor, I would also like to add in response to defense attorney's statement, that I don't believe that the earnings of the defendant are relevant here. The issue is what the victim has lost, not what the defendant earned.

THE COURT: I am admitting these checks that have been handed up to me, along with the statement.

\* \* \* \* \* \*

MR. JAMES: If the Court pleases, I would just like to make one further statement for the record, and once again reiterate that the Assistant District Attorney has once again stated that we are not concerned so much with what Mr. Erb earned during the period of the marriage as to what Mrs. Erb or Mrs. Welsh has suffered during this period. We have been supplied by Mr. Berkowitz, and the Court also has copies of expenses which are not—we are not contesting the expenses which have been set forth therein. However, I think it's imperative upon Mrs. Welsh to show—if we are talking loss, that must show her financial situation and position prior to the time of the marriage as opposed to at the time that the parties separated.

THE COURT: Why?

MR. JAMES: She is claiming a loss. And any allegation as to her financial situation concerning a loss, I believe should be substantiated in more than showing just

the expenses. To take it in an abstract form, she is alleging somewhere in the neighborhood of about $5,500 to $6,000 in expenses. But during the period of time they were married, the two parties had a joint income of over $33,000. And I think it's incumbent upon them to come forward with this information. We have requested it and have not been supplied it to show that she did in fact suffer the losses. The allegations of loss should be shown. The expenses are not denied. We are not denying that those expenses are shown. And they show the parties to whom the payments were made as represented by Mrs. Welsh. But we feel it is incumbent upon her to show her financial position prior to and subsequent to the marriage.

N.T. at 16–19.

The assistant district attorney replied to this argument by saying that

it wasn't only the financial loss to the victim in this case, and that was at this point the only way to make the victim somewhat whole. The grief she went through and the humiliation she went through is the major issue. . . . [T]hat is part of the loss here. It's not just this financial issue . . . .

N.T. 19.

The court responded to these several arguments by stating:

The thing that impresses me about this is it was a cold-blooded thing. It was a calculated thing. It was let's just fool this person for a while. Then I can get up and walk away. That's it. And for me to do anything but punish this man at this point would be for me to agree to the whole process, to laugh it off. And I'm not going to do it.

N.T. 19–20.

After a little more argument and colloquy, the court imposed sentence:

[T]he sentence of the Court is that you pay a fine of $5,000, that you be placed on probation, that you make restitution to the victim in the sum which will be deter-

mined by the probation office. I want the probation office to go over these bills first for me to somewhat sort them out. I will make a final determination of the amount of restitution. The defendant is placed on two years probation under the supervision of the Delaware County Probation Department. It is made a specific condition of this probation that the defendant pay during that two-year period whatever amount of restitution is determined to be due. Failing the making of that I will consider a violation of probation, which will leave the defendant open to being brought back here and having an appropriate jail sentence entered.

N.T. at 21.

–1–

"In Pennsylvania restitution can be imposed either as a condition of probation or as a direct sentence." *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 509, 407 A.2d 24, 26 (1979) (footnote omitted). *See also Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179 (1979). As a direct sentence, restitution is authorized by Section 1106 of the Crimes Code, Act of June 18, 1976, P.L. 394, No. 86, § 1, as amended, Act of April 28, 1978, P.L. 202, No. 53, § 7(5), effective June 27, 1978, 18 Pa.C.S.A. § 1106, which provides:

**§ 1106. Restitution for injuries to person or property**

**(a) General rule.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

**(b) Condition of probation or parole.**—Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

**(c) Authority of sentencing court.**—In determining whether to order restitution as a part of the sentence or as a condition of probation or parole, the court:

(1) Shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate.

(2) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just, provided that the period of time during which the offender is ordered to make restitution shall not exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted.

(3) May at any time alter or amend any order of restitution made pursuant to this section providing, however, that the court state its reasons and conclusions as a matter of record for any change or amendment to any previous order.

\*     \*     \*     \*     \*     \*

**(e) Restitution payments and records.**—Restitution, when ordered by a judge, shall be made by the offender to the probation section of the county in which he was convicted according to the order of the court or, when ordered by a district justice, shall be made to the district justice. The probation section and the district justice shall maintain records of the restitution order and its satisfaction and shall forward to the victim the property or payments made pursuant to the restitution order.

\*     \*     \*     \*     \*     \*

**(g) Preservation of private remedies.**—No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment.

**(h) Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

"**Crime.**" Any offense punishable under this title or by a district justice.

"**Injury to property.**" Loss of real or personal property, including negotiable instruments, or decrease in its value, directly resulting from the crime.

"**Offender.**" Any person who has been found guilty of any crime.

"**Personal injury.**" Actual bodily harm, including pregnancy, directly resulting from the crime.

"**Property.**" Any real or personal property, including currency and negotiable instruments, of the victim.

"**Restitution.**" The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

"**Victim.**" Any person, except an offender, who suffered injuries to his person or property as a direct result of the crime.

Restitution is also authorized by Section 1321 of the Sentencing Code, Act of December 30, 1974, P.L. 1052, No. 345, § 1, 18 Pa.C.S.A. § 1321, which provides:

§ 1321. Sentencing generally

(a) **General rule.**—In determining the sentence to be imposed the court shall, except where a mandatory minimum sentence is otherwise provided by law, consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

\* \* \* \* \* \*

(c) **Restitution.**—In addition to the alternatives set forth in subsection (a) of this section the court may order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained.

Finally, restitution as a condition of probation is authorized by Section 1354 of the Sentencing Code, Act of December 30,

1974, P.L. 1052, No. 345, § 1, 18 Pa.C.S.A. § 1354, which provides:

(a) General Rule—In imposing a sentence of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term shall not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.

(b) Conditions generally—The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law abiding life.

(c) Specific conditions.—The court may as a condition of its order require the defendant:

.    .    .    .    .

(8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.

.    .    .    .    .

(13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

Appellant's first argument is that in sentencing him, the lower court exceeded its authority.  This argument is based on the assumption that in imposing sentence, the lower court acted under the authority of 18 Pa.C.S.A. § 1106.  Proceeding from this assumption, appellant argues that Section 1106 does not authorize a sentence of restitution upon conviction of bigamy.  Appellant particularly relies upon subsection (a) of Section 1106, which provides that restitution may be ordered "[u]pon conviction for any crime wherein property has been stolen, converted or otherwise lawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime . . . ."

It is by no means clear what the lower court thought its source of authority to order restitution was. The arguments of respective counsel, which have been quoted above, did not cite the court to any authority, and were not couched in terms apparently related in any way to any of the possible sources of authority, instead speaking of "loss" in several different senses. Nor does the court's statement of reasons for its sentence, or the sentence itself, cite any authority. In its opinion, filed in response to the appeal from the sentence, the court states:

> Although, on the facts of this case, an Order for Restitution may not be authorized by 18 Pa.C.S.A. § 1106(a), Defendant's contention overlooks the broader authority which has been granted to the Courts of Common Pleas in attaching conditions to a Sentence of Probation.

Slip op. at 2.

The court then goes on to cite and quote Section 1354 of the Sentencing Code, which, as noted above, authorizes a court to order restitution as a condition of the probation.

On this state of the record, we have concluded that we need not, and so should not, decide whether 18 Pa.C.S.A. § 1106 authorizes a sentence of restitution upon conviction of bigamy. If there was any source of authority for the sentence, we may affirm—even if the source was not suggested to or known by the lower court at the time of sentencing. *Commonwealth v. Walton, supra.* Here it is clear that under Section 1354 of the Sentencing Code, a court is authorized to impose a sentence of probation upon conviction of bigamy, and to make restitution a condition of that probation. We therefore reject appellant's argument that in sentencing him, the lower court exceeded its authority.

–2–

Appellant's second argument is that

the sentence of restitution was not supported on the record in that the Trial Court failed to specify the amount

of restitution on the record and to determine that the Defendant had adequate means to pay.

Appellant's Brief at 15.

In *Commonwealth v. Walton, supra,* our Supreme Court discussed the principles to be applied in considering a sentence to probation on condition that the defendant make restitution. In its decision the Court contrasted such a sentence with a sentence that directs restitution *in addition* to statutory punishment—as may be done under 18 Pa.C. S.A. § 1106(a). Said the Court:

[T]here is, in our view, a significant distinction between restitution required in addition to a statutory punishment, such as imprisonment, and restitution required in lieu of such punishment. While such an order must be strictly scrutinized in conjunction with a primarily punitive sentence, conditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen; courts therefore are traditionally and properly invested with a broader measure of discretion in fashioning conditions of probation appropriate to the circumstances of the individual case. *See* ABA Standards, Probation, § 3.2 (Approved Draft, 1970).

*Commonwealth v. Walton, supra,* 483 Pa. at 598, 397 A.2d at 1184 (footnotes omitted).

In *Commonwealth v. Fuqua, supra,* we likewise discussed when restitution was appropriate:

An order of restitution or reparation imposed either as a direct sentence or as a condition of probation constitutes a "constructive tool[] in the criminal justice jurisprudence." *State v. Gerner,* 115 Ariz. 579, 566 P.2d 1057 (1977); *see* Schafer, *Restitution to Victims of Crime—An Old Correctional Aim Modernized,* 50 Minn.L.Rev. 243 (1965). Such sentences are to be encouraged as they constitute "an aid both to the criminal in achieving rehabilitation and to his victim in obtaining some measure of redress." *Common-*

*wealth v. Walton*, 483 Pa. 588, 599, 397 A.2d 1179, 1185 (1979); *see State v. Harris*, 70 N.J. 586, 363 A.2d 32 (1976); Annotation, *Propriety of Condition of Probation which Requires Defendant Convicted of Crimes of Violence to Make Reparation to Injured Victim*, 79 A.L.R.3d 976 (1977). As a sentence, or a condition of sentence, imposed following a criminal conviction, an order of restitution is not an award of damages. *See generally* Rothstein, *How the Uniform Crime Victims Reparation Act Works*, 60 ABAJ 1531 (1974). While the order aids the victim, its true purpose, and the reason for its imposition, is the rehabilitative goal it serves by "impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *State v. Stalheim*, 275 Or. 683, 689, 552 P.2d 829, 832 (1976); *see State v. Mottola*, 84 N.M. 414, 504 P.2d 22 (1972). Thus a court's concern that the victim be fully compensated should not overshadow its primary duty to promote the rehabilitation of the defendant. *See* Best & Birzon, *Conditions of Probation; An Analysis*, 51 Geo.L.J. 809 (1963); Merceret, *Sentencing Alternatives to Fine & Imprisonment*, 31 U.Miami L.Rev. 387 (1977).

*Id.*, 267 Pa.Super. at 508–509, 407 A.2d at 25–26 (footnote omitted).

Applying these statements to the present case, we conclude that the lower court was well within its discretion in ordering that as a condition of probation, appellant should make restitution to Ms. Welsh as the complaining witness. The arguments made by appellant's attorney at the sentencing hearing missed the point. The point was not whether, while he was "married" to Ms. Welsh, appellant had contributed more money to their relationship than she spent on him, so that she suffered some sort of net "loss"; the point was rather whether, by being required to repay Ms. Welsh what she spent on him, appellant would be impressed with the cruelty of his conduct, and deterred from repeating it, and encouraged to live in a responsible way. No precise

formula can be stated by which the effort to achieve these objectives can be translated into an exact amount of restitution to be paid. Much will depend upon the exact nature of the expenditures Ms. Welsh made on appellant's behalf, and the circumstances in which they were made. However, in deciding what sentence to impose, the lower court was obliged by the Sentencing Code to

> follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.
> 18 Pa.C.S.A. § 1321(b).

To require appellant as a condition of his probation to make restitution to Ms. Welsh was consistent with this general principle; it was a sentence that represented—or so the lower court was entitled to believe—"a constructive alternative to imprisonment, [aimed at effecting appellant's] rehabilitation and reintegration into society as a law abiding citizen . . . ." *Commonwealth v. Walton, supra,* 483 Pa. at 598, 397 A.2d at 1184. "Such sentences are to be encouraged . . . ." *Commonwealth v. Fuqua, supra,* 267 Pa.Super. at 508, 407 A.2d at 25–26.

Having said so much, however, we are nevertheless unable to affirm the lower court's sentence in its entirety.

In its opinion the lower court states:

> Finally, Defendant claims that "there is insufficient information provided in order to determine whether the amount to be awarded will exceed the victim's actual damages." Since the amount of restitution had not been set at the time Defendant filed his appeal, this is necessarily true. Indeed, following the determination of the Office of Court Services, the Court *may decide to hold an additional hearing* in order to set the amount due in restitution.
> Slip op. at 3–4 (emphasis added).

The procedure contemplated by the lower court is not clear. It appears from the court's opinion that the court planned to leave the initial determination to the Office of Court Services, after which it *might* itself examine and approve the amount so set. In imposing the sentence, however, the court stated, as noted above, that "I want the probation officer to go over these bills first for me to somewhat sort them out. I will make the final determination of the amount of restitution." N.T. 25.

In authorizing restitution as a condition of probation, the Sentencing Code provides that the sentencing court may require the defendant

[t]o make restitution of the fruits of his crime or to make reparations, *in an amount he can afford to pay, for the loss or damage caused thereby.*

18 Pa.C.S.A. § 1354(c)(8) (emphasis added).

Accordingly, it was the lower court's obligation to determine what loss or damage appellant had caused, and what amount of restitution he could afford to pay, and how he should pay it. The court was not free to delegate these duties to an agency. *See* Annotation, Propriety of Condition of Probation which Requires Defendant Convicted of Crimes of Violence to Make Reparation to Injured Victim, 79 A.L.R.3d 976 (1977). In *Commonwealth v. Fuqua, supra,* we said:

Since an order of restitution is a sentence, whether it is imposed as a direct sentence or as a condition of probation or parole, it must be supported by the record. *See Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). Among the things the sentencing court must consider on the record are: the extent of the injury suffered, *see* 18 Pa.C.S. § 1106(c)(1); the fact that the defendant's action caused the injury and that he will be able to pay for it, *see State v. Harris, supra;* and the type of payment—lump sum or installment—that will best serve the needs of the victim and the capabilities of the defendant. *See* 18 Pa.C.S. § 1106(c)(1).

*Id.,* 267 Pa.Super. at 510, 407 A.2d at 27 (footnote omitted).

We also said:

In accordance with its primary duty to promote the rehabilitation of the defendant, the court in imposing restitution must make sure that the amount awarded not only does not exceed the victim's damages but also does not exceed the defendant's ability to pay. *See State v. Garner, supra;* [115 Ariz. 579, 566 P.2d 1057 (1979)] *State v. Harris* supra. [70 N.J. 586, 363 A.2d 32 (1976)]. If the amount of restitution imposed exceeds the defendant's ability to pay, the rehabilitative purpose of the order is disserved, especially where the restitution payment is a condition of probation, for in such a case the defendant is told that he will not be imprisoned only if he somehow satisfies a condition he cannot hope to satisfy. As one court has stated:

Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole. However, conditioning probation on the satisfaction of requirements which are beyond the probationer's control undermines the probationer's sense of responsibility. *Huggett v. State,* 83 Wis.2d 790, 798, 266 N.W.2d 403, 407 (1978).

*Id.,* 267 Pa.Super. at 508–509, 407 A.2d at 26 (footnote omitted).

These considerations are especially pertinent here, given the fact that the lower court not only required appellant to make restitution but fined him $5,000. It was incumbent upon the court to determine whether appellant could afford to pay both such a fine and make restitution in an amount

that would constitute "an aid both to [appellant] in achieving rehabilitation and to [Ms. Welsh] in obtaining some measure of redress." *Commonwealth v. Walton, supra,* 483 Pa. at 599, 397 A.2d at 1185.

The judgment of sentence is reversed and the case remanded for re-sentencing consistent with this opinion. Any further appeal must be from the new sentence thus imposed.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I join in the majority opinion. However, I wish to state my understanding of the majority's rationale for determining the amount of money which appellant may be required to pay the victim as a condition of probation.

The majority states that "[t]he point was not whether, while he was 'married' to Mrs. Welsh, appellant had contributed more money to their relationship than she spent on him, so that she suffered some sort of net 'loss'; the point was rather, whether by being required to repay Mr. Welsh what she spent on him, appellant would be impressed with the cruelty of his conduct, and deterred from repeating it, and encouraged to live in a responsible way." Majority Opinion, *ante* 581. As I understand the majority opinion, appellant may be required to pay this amount since it was imposed as a condition of probation. I agree. Sentencing courts are "traditionally and properly invested with a broader measure of discretion in fashioning conditions of probation appropriate to the circumstances of the individual case." *Commonwealth v. Walton,* 483 Pa. 588, 598, 397 A.2d 1179, 1184 (1979) (citation omitted).

I do not understand the majority to, nor do I, express any opinion as to the propriety of requiring a defendant to pay such an amount as restitution imposed in addition to other punishment. It is with this understanding that I join the majority opinion.