[Nos. 6279–1; 6134–1.   Division One.   April 9, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. BOBBY R. EILTS, *Appellant.*

40

*Edwards & Barbieri, Malcolm L. Edwards,* and *Charles K. Wiggins,* for appellant.

*Norm Maleng, Prosecuting Attorney, Gene S. Anderson, Chief Deputy,* and *Stephen C. Anderson, Special Deputy,* for respondent.

JAMES, J.—Defendant Bobby R. Eilts was convicted after a jury trial of nine counts of violating The Securities Act of Washington, RCW 21.20. Probation conditioned upon restitution was ordered. On appeal, Eilts challenges his convictions and the terms of restitution. We affirm in part,

reverse in part, and remand for modification of the restitution order.

An information was filed in April 1975 charging Eilts with eight counts of violating RCW 21.20.010, which prohibits misleading or deceptive practices in connection with the offer or sale of securities. RCW 21.20.400 provides criminal penalties for such violations. Each count involved a sale of common stock in American General Industries to a separate investor. These sales occurred in the period between August 1971 and February 1972.

At the commencement of trial in July 1977, the State moved to amend its information to add two counts charging violations of RCW 21.20.140, which prohibits the sale of unregistered securities. These sales occurred in February 1972. The State's motion was granted over Eilts' objection.

Eilts was convicted of seven counts of stock fraud and the two counts of selling unregistered securities. He was sentenced to a 1–year jail term, with 9 months suspended upon the condition that he make full restitution to all— about 100—persons who purchased stock from him.

Eilts' appeal presents five issues:

1. Did the trial judge err in admitting certain evidence?

2. Was amendment of the information barred by the statute of limitations?

3. Should the trial judge have given a missing witness instruction?

4. Did the trial judge exceed his authority in ordering restitution to all victims?

5. Did the restitution order deprive him of due process of law and subject him to imprisonment for debt?

██ Eilts first contends that the trial judge improperly admitted two types of evidence. These contentions may be disposed of summarily. Evidence concerning sales not specifically charged in the information was admissible to show a common scheme or plan. *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950). Cross–examination concerning Eilts' other business activities was admissible because the subject

matter was opened by Eilts in his own defense. *State v. Riconosciuto,* 12 Wn. App. 350, 529 P.2d 1134 (1974).

■ Eilts next asserts that the two counts added by the amended information were barred by the statute of limitations. We agree. The Securities Act of Washington contains its own 5–year statute of limitations. RCW 21.20.400. Since that statute contains no tolling provision, Eilts' absence from the state was immaterial. The State's contention that the tolling provision of the general statute of limitations[1] applies is contrary to the clear language used therein.

■ The State also argues that the statute of limitations had not run because the crimes charged were still in progress during the immediate 5 years preceding the filing of the amended information. The crime of selling an unregistered security is complete at the time the sale is made; it is not capable of being a continuing offense. The State's contention that the charged crimes were continuing offenses because they were part of a broader scheme to defraud is likewise without merit.

The next assignment of error concerns the court's failure to give a requested missing witness instruction. We find no error. Donald Ingalls was an uncharged alleged coconspirator who had disappeared by the time of trial. Eilts' defense was that he himself had been defrauded by Ingalls. Eilts contends that it would have been natural for the State to have called Ingalls, since he alone could have rebutted Eilts' testimony. Consequently, Eilts argues that the jury should have been instructed that an unfavorable inference arose from the State's failure to call Ingalls.

■ A missing witness instruction may be proper if the witness' testimony would be important and not merely cumulative, and if the witness is "peculiarly available" to the side which fails to produce him. *State v. Davis,* 73 Wn.2d 271, 276, 438 P.2d 185 (1968). The *Davis* court elaborated on the availability requirement at page 277:

---

[1]RCW 10.01.020, applicable at the time, has been superseded by RCW 9A.04.080.

For a witness to be "available" to one party to an action, there must have been such a community of interest between the party and the witness, or the party must have so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging.

Ingalls testified extensively at a 1973 Securities and Exchange Commission hearing on American General Industries. Even though he had no relationship with the prosecutor's office, Eilts contends that the State had a duty to ensure the future availability of Ingalls. Eilts cites no authority for this proposition. We decline to recognize such a duty. The record at trial does not establish that Ingalls was "peculiarly available" to the State.

Eilts next assigns error to the scope of the restitution order. The trial judge ordered restitution for *all* persons who bought American General Industries stock. Eilts contends that restitution should have been limited to losses suffered by the investors named in the information. We agree.

In an appropriate case, probation may provide two social purposes: (1) an opportunity for reformation of the perpetrator of a crime and (2) an opportunity to secure restitution to the victims of the crime.

A convicted defendant has no right to probation. *State v. Blight,* 89 Wn.2d 38, 569 P.2d 1129 (1977). A trial judge cannot be compelled to grant probation. It is a matter of grace, privilege or clemency which rests almost exclusively within the trial judge's discretion. *State v. Farmer,* 39 Wn.2d 675, 237 P.2d 734 (1951); *State v. Blight, supra.*

■ A trial judge's power to grant probation is, however, limited by statute. RCW 9.95.210 provides:

> The court may also require the defendant to make such monetary payments, on such terms as it deems appropriate under the circumstances, as are necessary . . . to make restitution to any person or persons who may have

suffered loss or damage by reason of the commission of the *crime in question,* . . .

(Italics ours.) The permissible limits of a trial judge's discretion are bounded by the statute; he is powerless to act beyond it. *State v. Farmer, supra; State ex rel. Schock v. Barnett,* 42 Wn.2d 929, 259 P.2d 404 (1953).

The question presented is therefore one of statutory interpretation: whether the "crime in question" includes allegedly criminal activity which was not specifically charged in the information and was not a basis for conviction. We hold that it does not and that the clear statutory language "crime in question" means only the crime or crimes on which the conviction was specifically based.

The State contends that "[t]he 'crime in question' in this instance is fraud in the offer and sale of a security to the public." It reasons that all investors who purchased stock from Eilts are victims of the "crime in question," and that the named count victims are only representative of the entire class of victims. We find no merit in the State's reasoning. Criminal statutes are construed against the State. *Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958). They will not be extended beyond their plain terms by construction or implication. *State v. Youngbluth,* 60 Wash. 383, 111 P. 240 (1910).

Our courts have recognized that probation and restitution must be reasonably related to a defendant's duty to make reparation or to the prevention of future crimes. *State v. Summers,* 60 Wn.2d 702, 375 P.2d 143 (1962); *County of Spokane v. Farmer,* 5 Wn. App. 25, 486 P.2d 296 (1971).

In *Summers,* the defendant was convicted of manslaughter. His prison sentence was suspended on the condition that he pay the victim's funeral expenses and support his own children. On appeal, the child support condition was reversed. In so doing, the court stated that since the child support was not reasonably related to either reparation or rehabilitation, it was beyond the statute's limits.

The State has not proved—and Eilts does not admit—that he acted with fraudulent intent toward the unnamed purchasers of American General Industries stock. Although they are victims in the sense that they exchanged their money for what turned out to be worthless stock, it cannot be said that they are the victims of a "crime." Therefore, neither purpose behind the restitution statute would be fulfilled by requiring Eilts to make restitution to these people. *See People v. Richards,* 17 Cal. 3d 614, 552 P.2d 97, 131 Cal. Rptr. 537 (1976).

Other jurisdictions have reached the same result under similar statutes. The federal probation statute provides that a defendant

> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; . . .

18 U.S.C. § 3651. Federal courts have consistently concluded that restitution is limited to victims of the crimes for which the defendant was specifically charged and convicted. *See, e.g., Karrell v. United States,* 181 F.2d 981 (9th Cir.), *cert. denied,* 340 U.S. 891, 95 L. Ed. 646, 71 S. Ct. 206 (1950); Annot., 97 A.L.R.2d 798 (1964).

The Illinois Supreme Court has held that trial courts in that state have no power to order restitution of amounts not stated in the information:

> The trial court was not empowered to order restitution of sums extraneous to the informations before it. Section 5-6-3(b)(10) of the Unified Code of Corrections . . . empowers the court to make as a condition to the probation the "restitution or reparation in an amount not to exceed actual loss or damage to property and pecuniary loss * * * [and to] determine the amount and conditions of payment." To the extent that the restitution as ordered exceeded the amount that may have been ordered under the statutory authority, the order or condition was erroneous as to the excess.

*People v. Mahle,* 57 Ill. 2d 279, 284, 312 N.E.2d 267 (1974).

Public policy considerations support the statutory limitation on restitution. Victims of sales not named in the

information have the right to bring a civil action against Eilts for amounts they allegedly lost. As a matter of public policy, it is preferable to dispose of Eilts' liability to these people in separate proceedings.

The California Supreme Court, in judicially narrowing the potential reach of its broadly–worded restitution statute, was mindful of these same policy considerations:

> Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct. A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money.

*People v. Richards, supra* at 620.

Eilts further contends that the restitution order was a denial of due process of law and constituted imprisonment for debt. In view of our disposition of the restitution issue, we need not reach this question.

The convictions based on the two added counts are reversed and the charges dismissed; the remaining convictions are affirmed. We remand for modification of the restitution order consistent with this opinion.

FARRIS and SWANSON, JJ., concur.

Reconsideration denied June 21, 1979.

Review granted by Supreme Court September 21, 1979.