448 A.2d 568

**COMMONWEALTH of Pennsylvania**

v.

**James Patrick GALLOWAY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1981.

Filed July 16, 1982.

150

Dennis V. Williams, Erie, for appellant.

James A. Meyer, District Attorney, Ridgeway, for Commonwealth, appellee.

Before SPAETH, WIEAND and JOHNSON, JJ. .

JOHNSON, Judge:

■ Appellant was convicted by a jury of Arson-Endangering Property[1] and Aggravated Assault[2] and sentenced, on the Arson conviction, to, *inter alia*, three to six years imprisonment and to make restitution in the amount of $100 to Talbot E. Cuthbert and Edna Mae Galloway and $42,-921.83 to the insurance company who had insured the residence against fire damage. He received a concurrent sentence of three to six years for Aggravated Assault. There-

1. 18 Pa.C.S.A. § 3301(b)(1).

2. *Id.*, § 2702(a)(1).

after, Appellant's Motion to Modify Sentence was denied and this appeal, involving twelve issues,[3] followed.

## I.

■ The first issue involves the sufficiency of the evidence as to the arson conviction. The evidence is sufficient if it supports the verdict beyond a reasonable doubt when construed in the light most favorable to the Commonwealth, with all proper inferences drawn favoring the Commonwealth. *Commonwealth v. Edwards*, 493 Pa. 281, 426 A.2d 550 (1981).

■ A conviction for arson requires the establishment of three facts: (1) that there was a fire; (2) that it was of incendiary origin; and (3) that defendant was the guilty party. *Commonwealth v. Dolan*, 287 Pa.Super.Ct. 202, 429 A.2d 1171 (1981); *Commonwealth v. Colon*, 264 Pa.Super.Ct. 314, 399 A.2d 1068 (1979).

■ Although the majority of evidence against Appellant was circumstantial, we have repeatedly held that the corpus delicti of arson can be proved by such evidence alone. *Commonwealth v. Patterson*, 247 Pa.Super.Ct. 527, 372 A.2d 1214 (1977), *citing Commonwealth v. Nasuti*, 385 Pa. 436, 123 A.2d 435 (1956).

■ It is undisputed that a fire occurred at the residence on May 22, 1979. A fire marshal testified that his investigation determined that the fire was incendiary in origin. Although he was unable to determine the exact nature of the hydrocarbon used as the accelerant, he was able to determine that the fire began in the corner of the living room. Appellant's quotation of certain statements made by the fire marshal are not conclusive in discrediting the fire marshal's testimony.

**3.** Appellant phrases his first two arguments in terms of the court's failure to grant Appellant's demurrer. This is not an appropriate issue for appellate review where Appellant did not rest following the adverse ruling. *Commonwealth v. McNeal*, 493 Pa. 395, 426 A.2d 606 (1981). However, we will treat the question as if properly framed.

Appellant further argues that there was insufficient evidence of his participation in setting the fire. The record indicates that Appellant and his wife, the victim of the aggravated assault, returned home after visiting a friend early on the morning of the fire. An argument ensued and the victim was physically injured. The victim then walked to a neighbor's house for aid, while Appellant remained at the residence. The neighbor called the victim's ex-husband who arrived at the neighbor's house to take the victim to the hospital. The ex-husband testified that on leaving the neighbor's house, he noticed the silhouette of a man standing under a light in the doorway of Appellant's residence, who looked like Appellant. Also, the ex-husband testified that he saw the taillights of Appellant's car blink as he drove past Appellant's residence and that Appellant's car then proceeded down the hill towards the fire alarm. Evidence was presented concerning statements made by the victim to two Commonwealth witnesses including her ex-husband, that Appellant was going to burn the house down. There was no evidence of fire at the residence in question at this time.

Further evidence indicated that the fire alarm at the bottom of the hill was pulled by Appellant who then proceeded to his parents' house to drop off his dog and to tell his mother of the fire. Appellant then returned to the location of the fire alarm and parked his car some distance away. He made no attempt to inform the firemen who had arrived at the fire alarm location where the fire was. Upon the arrival of Appellant and the firemen at the scene of the fire, Appellant had to be restrained from entering the house. He told firemen that his wife and dog were inside.

Upon a complete review of the record, we find the evidence to have been sufficient beyond a reasonable doubt for a jury to have found Appellant guilty of arson. *See Commonwealth v. Rainey*, 242 Pa.Super.Ct. 39, 363 A.2d 1148 (1976).

## II.

■ Appellant argues that his conviction for aggravated assault was based on insufficient evidence. The record shows that Appellant's wife went to a neighbor's home for aid on the morning of the fire. She had open head and lip wounds, as well as numerous bruises, requiring a period of hospitalization. She told the neighbor, as well as her ex-husband, a state police officer, a doctor and a nurse, that Appellant had beaten her.

Although her testimony at trial indicated that the injuries were accidental and that Appellant did not directly cause them, we find no error in the jury's determination as to credibility. Viewing the evidence and all reasonable inferences in a light most favorable to the Commonwealth, *Commonwealth v. Edwards, supra*, we conclude that the jury could have found Appellant guilty of aggravated assault beyond a reasonable doubt.

## III.

Appellant next contends that the lower court erred in consolidating the arson and aggravated assault charges, despite his pre-trial objection.

Pa.R.Crim.P., Rule 228(b) states:

(b) Two or more offenses, of any grade, other than murder, may be charged in the same information if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. There shall be a separate count for each offense charged.

■ It is well-established that the propriety of consolidating separate informations or indictments is a matter of discretion with the trial judge and will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715 (1981); *Commonwealth v. Finnegan*, 280 Pa.Super.Ct. 584, 421 A.2d 1086 (1980).

The test of whether consolidation is proper is related to the test of whether evidence of one crime may be admitted at the trial for another. The present rule in Pennsylvania is that consolidation is proper (*i.e.*, the denial of a motion for severance is not an abuse of discretion) if (1) the facts and elements of the two crimes are easily separable in the minds of the jury; and (2) the crimes are such that the fact of the commission of each crime would be admissible as evidence in a separate trial for the other. (citations omitted)

*Commonwealth v. Terrell*, 234 Pa.Super.Ct. 325, 328, 339 A.2d 112, 114 (1975).

■ Applying this test to the instant case, it is clear that the facts and elements of arson and aggravated assault are easily separable, not only as to the law, but in reference to the facts in this case. The assault took place immediately prior to the fire. As to the second element of the test, evidence of assault was admissible to show Appellant's motive for arson.

We therefore find no error by the trial court.

## IV.

■ Appellant's fourth and fifth assignments of error concern the re-reading of selected portions of testimony to the jury, upon their request, in the absence of Appellant. As trial counsel failed to object, Appellant's different counsel on appeal urges that this was ineffective assistance.

The court in *Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723 (1968) held that the proper procedure for reviewing testimony is for a review conducted in open court, in the presence of the parties and counsel. *Accord Commonwealth v. Banks*, 267 Pa.Super.Ct. 10, 405 A.2d 1277 (1979); *see also Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1971); *Commonwealth v. Diehl*, 378 Pa. 214, 107 A.2d 543 (1954).

However, we have found no case law which has specifically dealt with the issue raised by Appellant. We are of the opinion that the error in not having Appellant present, and

in not proceeding in open court is, at most, harmless error. This is particularly true in view of the fact that Appellant's different counsel on appeal has alleged no prejudice concerning this "error".

Since we find the error, if any, to have been harmless, trial counsel was not ineffective for failing to object to a meritless claim. *Commonwealth v. Jennings*, 285 Pa.Super.Ct. 295, 427 A.2d 231 (1981).

## V.

The sixth and eighth assignments of error involve the alleged ineffective assistance of trial counsel for failing to object to the hearsay testimony of two Commonwealth witnesses, Thomas E. Jones and Talbot E. Cuthbert, as to declarations made by the victim.

■ When an ineffective assistance claim is raised, we utilize a two-step analysis: (1) whether the underlying issue is of arguable merit and (2) if so, whether the course chosen by counsel had some reasonable basis aimed at promoting his client's interest. *Commonwealth v. Jennings, supra, citing Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978) and *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980).

The victim told the witnesses that Appellant had beaten her.[4] She also told one of the witnesses that Appellant stated he was going to burn the house down.[5] The statements occurred within a period of approximately one hour after the victim was injured.

Prior to trial, the court discussed the admissibility of the statements as res gestae exceptions to the hearsay rule with counsel for the parties.[6] The court determined that it would permit the testimony if a proper foundation for the exception was made by the Commonwealth.

4. Record, 10/15/79, vol. I, at pp. 23–5, 54.

5. *Id.*, at pp. 54–6.

6. *Id.*, at pp. 4–6.

156

■ To qualify under the excited utterance exception to the hearsay rule, the statement must be:

... a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Pronkoskie*, 477 Pa. 132, 137–38, 383 A.2d 858, 860 (1978), *quoting Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942).

It is clear from the extent of the victim's injuries that she was subject to "overpowering emotion caused by some unexpected and shocking occurrence." *See Commonwealth v. Ransom*, 240 Pa.Super.Ct. 92, 360 A.2d 721 (1976).

■ The second requirement is that the declaration be a spontaneous reaction to the startling event. There is no clear-cut rule as to the time sequence; each case must be analyzed in light of its particular facts. *Commonwealth v. Pronkonskie, supra; Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975). Also, the mere fact that a statement is made in response to a question does not prevent its admission as an excited utterance. *Commonwealth v. Pronkonskie, supra; Commonwealth v. Cooley, supra.*

■ In the instant case, we find the record indicates that the victim's injuries were sufficient enough to have caused excited utterances to both of these Commonwealth witnesses. Despite the lack of testimony concerning the length of time between the infliction of the injuries and the victim's arrival at a neighbor's home, the evidence indicates that she was still bleeding from head wounds when she arrived. Other evidence indicates that she and Appellant left a friend's home around 1:30 a. m. and that the victim arrived at the neighbor's home at approximately 2:00 a. m.

We therefore hold that the statements were admissible under the excited utterance exception to the hearsay rule. Because of this determination, counsel was not ineffective for failing to object to them at the time of trial.

## VI.

 Appellant's seventh assignment of error involves his claim of ineffective assistance for trial counsel's failure to object to the hearsay testimony of Commonwealth witness Martha Laughner, a nurse.

The witness on direct examination testified as follows:

Q The two cuts back of her head, could you describe those a little better, please?

A They were very deep cuts, rather jagged. When I questioned her about the cuts, she said her husband had pounded her head on the wall.

Q Did she say anything else to you about her condition?

A She said he had beat her continuously and he had stated he was going to kill her, . . .

Record, 10/15/79, vol. I, at p. 79.

The witness also testified as to the victim's hysteria as follows:

Q Tell me what happened then after you took her back to the room. What did you do?

A I—well, it's routine to check them over quite thoroughly before we call the doctor, and that's what I did. I checked her vital signs. They seemed to be alright. She was quite upset and I would say hysterical, and she kept repeating that her husband had tried to kill her.

Q Did she say anything else?

A She said she finally got away from him and ran to the neighbors' for help.

. . . . .

## CROSS–EXAMINATION

Q Mrs. Laughner, you say when you saw Mrs. Galloway there that she was quite hysterical?

158

A Yes.

. . . .

Record, 10/15/79, vol. I, at pp. 80, 82.

It is clear that the basis for admitting this testimony is the excited utterance exception to the hearsay rule, as discussed *supra.* The record indicates that the victim was brought to the hospital sometime after 2:30 a. m. on the night in question. The lapse of time between the injury and the making of the statements to this witness is unclear, but it appears to have been at least one-half hour after the injury was incurred. Concerning excited utterances it has been said that:

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit. *Commonwealth v. Noble,* 371 Pa. 138, 88 A.2d 760 (1952); *VI Wigmore, supra* at § 1750(b). Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." *See Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966) (forty-five minutes); *Commonwealth v. Dugan* [252 Pa.Super. 377, 381 A.2d 967] *supra* (2½–3 hours). The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance. *VI Wigmore, supra* at § 1750(b).

*Commonwealth v. Gore,* 262 Pa.Super.Ct. 540, 547–48, 396 A.2d 1302, 1305 (1978).

Pursuant to our discussion *supra,* we find the statements concerning the source of the victim's injuries qualify as excited utterances and were therefore, admissible.

As to the victim's statements quoted *supra,* concerning the declaration made by Appellant that he was going to kill the victim, Appellant claims this was hearsay on hearsay.

First, the statement was admissible, as between Appellant and the victim, as an admission. *See Commonwealth v. Cooley,* 484 Pa. 14, 398 A.2d 637 (1979). Secondly, as be-

tween the victim and the witness, the excited utterance exception, discussed *supra*, qualifies it for admission.

Therefore, Appellant's claim is meritless.

## VII.

■■■ Appellant argues that trial counsel was ineffective for failing to object to remarks of the court clerk made during the poll of the jury.

Appellant's reliance on *Commonwealth v. Ciotti*, 279 Pa. Super.Ct. 75, 420 A.2d 751 (1980) for support is erroneous. The Superior Court in *Ciotti, supra,* determined that the defendant was deprived of his right to poll the jury because of the court clerk's *remarks.* Those remarks were "When I call your name, would you please stand *and respond yes."* (emphasis added). The Supreme Court ultimately vacated and remanded the determination of the Superior Court on the issue of the court clerk's remark. *Commonwealth v. Ciotti,* 496 Pa. 232, 436 A.2d 983 (1981). The clerk in the instant case made no such remark, but merely asked: "[name of juror], you've heard the verdicts as rendered by this jury and recorded in this Court in the instant cases. Are those your verdicts? Are those your findings?" This procedure was not improper. *See Commonwealth v. Pacini,* 224 Pa.Super.Ct. 497 n.7, 307 A.2d 346 n.7 (1973) (dictum).

We therefore find Appellant's argument meritless.

## VIII.

■■■ The next allegation involves whether the Commonwealth committed prosecutorial misconduct while attempting to cross-examine the victim.

During the Commonwealth's examination of the victim, a discussion ensued at sidebar where the Commonwealth's attorney argued that he should have the right to cross-examine his witness due to surprise. However, although upon resuming questioning, some of the proffered questions asked of the victim were leading, they in no way were prejudicial to Appellant and did not constitute reversible error.

Therefore, no prosecutorial misconduct occurred and Appellant's argument is without merit.

## IX.

Appellant next argues that trial counsel was ineffective for failing to object to counsel's opening remark which made mention of hearsay testimony relating to statements made by the victim to Commonwealth witness Tom Jones.

█ A district attorney's remarks in his opening statement must be fair deductions from the evidence the Commonwealth in good faith expects to develop, not merely assertions intended to inflame the passions of the jury. *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978).

█ In order to obtain judicial relief, the language of the prosecuting officer in the opening statement must be such that its unavoidable effect is to so prejudice the jury against the accused and prevent the finding of a true verdict. *Commonwealth v. Betrand*, 484 Pa. 511, 399 A.2d 682 (1979); *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975).

█ As we have determined that the said hearsay evidence was properly admitted, *supra*, there was no error in the Commonwealth making reference to it in its opening statement and therefore, no ineffective assistance in trial counsel not objecting to it. *See Commonwealth v. Detrie*, 263 Pa.Super.Ct. 75, 397 A.2d 2 (1979).

## X.

Appellant's final allegation involves (1) whether the court was authorized to require Appellant to make restitution to Delta Claims Service, Inc., the fire insurance company whose policy covered the dwelling in question and (2) whether the prison sentences imposed were manifestly excessive.

█ The statutory authority for imposing restitution as a direct sentence is found in 18 Pa.C.S.A. § 1321(c)[7] and 18 Pa.C.S.A. § 1106. Section 1106(a) states:

(a) General rule.—Upon conviction for any crime wherein property has been stolen, converted or otherwise

7. Transferred to 42 Pa.C.S.A. § 9721(c).

unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

Section 1106(h) defines "victim" as "[a]ny person, except an offender, who suffered injuries to his person or property as a *direct* result of the crime." (emphasis added).

> As a sentence, or a condition of sentence, imposed following a criminal conviction, an order of restitution is not an award of damages.... While the order aids the victim, its true purpose, and the reason for its imposition, is the rehabilitative goal it serves by "impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *State v. Stalheim*, 275 Or. 683, 689, 552 P.2d 829, 832 (1976); *See State v. Mottola*, 84 N.M. 414, 504 P.2d 22 (1972). Thus a court's concern that the victim be fully compensated should not overshadow its primary duty to promote rehabilitation of the defendant.

*Commonwealth v. Fuqua*, 267 Pa.Super.Ct. 504, 508, 407 A.2d 24, 26 (1979) (citations and footnotes omitted). Since an order of restitution is a sentence, whether it is imposed as a direct sentence or as a condition of probation or parole, it must be supported by the record. *Commonwealth v. Fuqua, supra.* The trial court must determine the loss or damage the defendant has caused, what amount of restitution he can afford to pay and how he should pay it. *Commonwealth v. Erb*, 286 Pa.Super.Ct. 65, 428 A.2d 574 (1981).

In the instant case, it is apparent that the insurance company, the recipient of the restitution, was not the "victim" according to the definition found in 18 Pa.C.S.A. § 1106(h). The insurance company was required to reimburse the legal owners, as per an insurance contract, but such payment does not constitute *injury* as required by § 1106(h). Injury to property is defined in 18 Pa.C.S.A. § 1106(h) as "[l]oss of real or personal property, including negotiable instruments, or decrease in its value, directly

resulting from the crime." Therefore, payment under an insurance contract is not a "loss", but merely a contractual obligation. Only the innocent legal owners of the home destroyed by the arson are entitled to restitution on the arson conviction as the victims.[8]

■ Also, upon a review of the sentencing proceeding, it appears that the lower court failed to support any of its orders for restitution, including the order for $100 restitution to Talbot E. Cuthbert and Edna Mae Galloway. No findings were made concerning the amount of damages nor the ability of Appellant to pay restitution. Therefore, we must vacate the sentences as they relate to restitution, and remand to the lower court for resentencing consistent with this opinion.

■ As to Appellant's final issue that the prison sentences imposed were manifestly excessive, we note that the imposition of a proper sentence is a matter vested in the sound discretion of the sentencing judge. *Commonwealth v. Bryner*, 285 Pa.Super.Ct. 305, 427 A.2d 236 (1981). A review of the sentencing hearing indicates no abuse of discretion. The sentencing judge gave adequate reasons for the imposition of the prison sentences and took into consideration the factors stated in the Sentencing Guidelines.

Judgment of sentence affirmed, except as to the orders of restitution; said orders are vacated and the case remanded for resentencing as to restitution to the victims consistent with this opinion. Jurisdiction is not to be retained.

WIEAND, J., files a concurring opinion.

**8.** Concerning an order of restitution as payable only to the direct victim, see *People v. King*, 648 P.2d 173 (1982); *Montgomery v. State*, 292 Md. 155, 438 A.2d 490 (1981); *State v. Eilts*, 23 Wash.App. 39, 596 P.2d 1050 (1979); *U. S. v. Clovis Retail Liquor Dealers Trade Assoc.*, 540 F.2d 1389 (10th Cir. 1976); *People v. Grago*, 24 Misc.2d 739, 204 N.Y.S.2d 774 (Cty.Ct.1960); *Karrell v. U. S.*, 181 F.2d 981 (9th Cir. 1950), *U. S. cert. den.*, 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646 (1950). *But see, People v. Bond*, 99 Mich.App. 86, 297 N.W.2d 620 (1980); *State v. Green*, 29 N.C.App. 574, 225 S.E.2d 170 (1976), *cert. den.*, 290 N.C. 665, 228 S.E.2d 455 (1976); *Flores v. State*, 513 S.W.2d 66 (Tex.Cr.App.1974); *Shenah v. Henderson*, 106 Ariz. 399, 476 P.2d 854 (1970).

WIEAND, Judge, concurring:

I agree with the majority's determination that there was no trial error requiring the grant of a new trial. I concur also that the record does not support that part of the sentence which orders the appellant, James Patrick Galloway, to make restitution for the arson which he committed. However, I am unable to agree that an order of restitution must be based on a present, as opposed to a potential, financial ability to satisfy a sentence of restitution or that an order directing restitution to a subrogated insurance carrier is invalid. Therefore, I do not join in the majority opinion but concur in the result.

Authority for sentencing a convicted offender to make restitution is contained in Section 1106 of the Crimes Code, 18 Pa.C.S. § 1106, as follows:

§ 1106. Restitution for injuries to person or property

(a) General rule.—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender may be sentenced to make restitution in addition to the punishment prescribed therefor.

(b) Condition of probation or parole.—Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

(c) Authority of sentencing court.—In determining whether to order restitution as a part of the sentence or as a condition of probation or parole, the court:

(1) Shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate.

(2) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just, provided that the period of time during which the offender is ordered to make restitution shall not

exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted.

(3) May at any time alter or amend any order of restitution made pursuant to this section providing, however, that the court state its reasons and conclusions as a matter of record for any change or amendment to any previous order.[1]

We have previously held that an order of restitution is not an award of damages but a rehabilitative tool to impress "upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *Commonwealth v. Erb*, 286 Pa.Super. 65, 79, 428 A.2d 574, 581 (1981); *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 508, 407 A.2d 24, 26 (1979). We have also held that a court's authority to order restitution, whether as a direct sentence or as a condition of probation, is not affected by the happenstance of whether the victim carries insurance. *Commonwealth v. Kerr*, 298 Pa.Super. 257, 262, 444 A.2d 758, 760 (1982). Indeed, we have said unequivocally that an offender "has no standing to question contractual or subrogation rights which govern disposition of moneys paid via restitution to the victim." *Commonwealth v. Kerr, supra*, 298 Pa.Superior at 262, 444 A.2d at 761. Why, then, should a sentenced offender have standing to object if the court recognizes the subrogation rights of the victim's insurer and, with the consent of the victim, substitutes the insurer as the person to be reimbursed by the offender's payment of restitution? Neither appellant nor the majority suggests any valid policy or practical reason for insisting that such payments be made only to the victim who thereafter must, by contract, deliver them to his insurer. *Cf. People v. Bond*, 99 Mich.App. 86, 297 N.W.2d 620 (1980); *Contra People v. Grago*, 24 Misc.2d 739, 204 N.Y.S.2d 774 (1960).

"Subrogation" has been defined as the "substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted suc-

1. *See also* 42 Pa.C.S. § 9721(c).

ceeds to the rights of the other in relation to the debt or claim . . . ." Black's Law Dictionary (5th ed. 1979). The Crimes Code clearly authorizes the court to order restitution, either as a condition of probation or as a direct sentence. *Commonwealth v. Kerr, supra,* 298 Pa.Superior at 259, 444 A.2d at 760; *Commonwealth v. Erb, supra* 286 Pa.Super. at 73, 428 A.2d at 578; *Commonwealth v. Fuqua, supra* 267 Pa.Super. at 509, 407 A.2d at 26. It does not direct specifically to whom restitution payments are to be made. It does not require that restitution payments be made to the "victim." It does not preclude payments of restitution, either expressly or by necessary implication, to an insurer who has compensated the victim of a criminal act and has been subrogated to his rights. In such cases, the court is no more a "collection agency" to recover a civil loss than when restitution is to be paid to an insured "victim" and he or she then delivers the same to the subrogated insurer.

An order directing payment to a subrogated insurer will not impair the rehabilitative effect of a sentence of restitution. Whether the restitution is paid to the insurer directly or whether it is paid indirectly via the insured victim, the sentence of restitution will serve its rehabilitative purpose of impressing upon the offender the loss he has caused and his responsibility to repair that loss.

For these reasons, I am unable to agree with the majority's holding that a sentence is illegal if it directs that restitution be paid directly to a subrogated insurance carrier which has reimbursed the "victim" for his loss. *See United States v. Follette,* 32 F.Supp. 953 (E.D.Pa.1940).

An order of restitution is a sentence; and, therefore, it must be supported by the record. *Commonwealth v. Seminko,* 297 Pa.Super. 418, 420, 443 A.2d 1192–1193 (1982); *Commonwealth v. Erb, supra* 286 Pa.Super. at 81, 428 A.2d at 582; *Commonwealth v. Fuqua, supra* 267 Pa.Super. at 508, 407 A.2d at 27. However, there is no rule of law which holds that appellant can be ordered to make restitution only if he has a present financial ability to make immediate restitution. In the instant case, appellant has been sentenced to serve a term of imprisonment; and, therefore, it is

unlikely that he will be able to make restitution payments before he is granted parole. He will in all probability be granted parole without again appearing before the sentencing court, for this decision must be made by the Pennsylvania Board of Probation and Parole. *See* Act of August 6, 1941, P.L. 861, § 1 et seq., as amended by Act of December 27, 1965, P.L. 1230, § 1 et seq., 61 P.S. § 331.1 et seq. Consequently, it is entirely proper for the sentencing court to include a restitution requirement at the time it imposes sentence. This is so even though the information regarding a defendant's future earnings at that time may well be limited to such items as education, training, experience, prior employment record and anticipated future living expenses. Neither a sentence of imprisonment nor an inability to ascertain with accuracy the future earning capacity of the defendant should deter a trial court from ordering restitution as part of a sentence.[2] The rehabilitative goal to be achieved by a sentence of restitution will be well served if a defendant, during parole, is required to make reasonable sacrifices in order to make good the loss which he or she has caused. *Commonwealth v. Wood*, 300 Pa.Super. 463, 446 A.2d 948 (1982).

---

**2.** Section 1106(a) of the Crimes Code, 18 Pa.C.S. § 1106(a) expressly permits both a sentence of imprisonment and a sentence of restitution. *See also* 42 Pa.C.S. § 9721(c).