J-A30044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC GRAHAM | : | |
| | : | |
| Appellant | : | No. 2001 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007307-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                 **FILED JANUARY 27, 2026**

Eric Graham ("Graham") appeals from his convictions for second-degree murder, arson, and related offenses.  He challenges the sufficiency and weight of the evidence, asserts the trial court abused its discretion by admitting evidence about a letter he wrote to a witness, and objects to the trial court's jury instruction about his failure to provide alibi notice.  Finding no merit in Graham's claims, we affirm.

On November 9, 2021, Rahsead Palmer ("the victim"), a visitor to a rowhome rooming house on 3621 N. 21st Street owned by Virgil Carter ("Carter"), died of smoke inhalation and heat injuries from a fire ignited in the house.  Graham had an apartment in the rooming house but Carter had ejected him two to three weeks before the fire when he argued about his rent.  Graham appeared repeatedly in the area of the rooming house in the weeks between his ejection and the fire.  The afternoon before the fire, Graham went

to the rooming house and demanded to pick up his bed. Carter told Graham he had called Graham's sister to come to pick up the bed. *See* Trial Court Opinion, 2/20/25, 2-4; N.T., 1/23/24, at 72-73, 142-43, 152-53; N.T., 1/24/24, 12.

Between two and three hours before the fire started, Neil Gladney ("Gladney"), a tenant of the rooming house, found Graham on the first floor. Graham asked Gladney and other tenants if someone had taken his bed; he threatened to report it to the masjid (mosque), then went upstairs to question other people. Gladney left the house; he returned after 1:00 a.m. and began socializing with friends. Sometime after 2:00 a.m., he and others smelled smoke and jumped out of the second-floor window. A police officer received a call about the fire shortly after 3:00 a.m. and arrived to find the house fully engulfed in flames and injured people outside. *See* N.T., 1/23/24, at 61, 95-96. The victim's burned body was found inside the home. *See* Trial Court Opinion, 2/20/25, 2-4; *See* N.T., 1/23/24, at 78-79, 90-91, 99-100, 122-23.

Philadelphia Fire Marshall Lieutenant Tina Peterson ("Lt. Peterson"), an expert in fire science and investigation, examined the rooming house after the fire was extinguished and determined it had been set deliberately in Graham's first-floor room by application of a flame to bedding and a box spring. The fire then spread through open spaces in the walls and via the stairwell all the way to the roof. *See* Trial Court Opinion, 2/20/25, 2-4; N.T., 1/23/24, 78-79; N.T. 1/24/24, at 8-9, 16, 19-20, 24-28, 32, 49, 52-54.

Gladney knew the bodega across the street from the house had a video surveillance system pointing toward the rooming house. He went there the morning after the fire and viewed the video footage from around the time of the fire, which showed Graham leaving the area around the time the fire started. At trial, Graham acknowledged he was shown on the video at approximately 12:40 a.m., but denied he was the person shown fleeing the scene shortly before the fire erupted. *See* Trial Court Opinion, 2/20/25, 2-4; N.T., 1/23/24, at 104-11, 138, 165-67; N.T. 1/24/24, at 59; 1/25/24, at 26-28, 45.

At trial, Carter testified Graham had sent him a letter from prison a month or two before trial asking Carter why he was lying on the witness stand[1] and asking him not to testify at trial. In the letter, Graham also stated the fire must have resulted from the accidental dropping of a cigarette, a methodology Lt. Peterson said was not the cause of the fire, and said he was sorry and Carter should let him be. The letter was misplaced and not available at trial. *See* Trial Court Opinion, 2/20/25, 2-4; N.T, 1/23/24, at 169-71, 183.

Police recovered video from three locations, including the bodega, and prepared still photographs from those videos. Detective Thorsten Lucke, an expert in surveillance video evidence recovery and video processing, analysis, and compilation, assembled a video compilation of activity in the area of the

_____

[1] This was presumably a reference to the preliminary hearing.

house before and after the fire. Graham was the sole individual the video showed leaving the area before the fire began. *See* Trial Court Opinion, 2/20/25, 2-4; N.T., 1/24/24, at 59-72, 80-96, 130-31.

For the first time at trial, Graham stated he was at his sister's house or on his way to his sister's house at the time of the fire. *See* N.T., 1/25/24, at 23, 54-61. Graham had not provided alibi notice prior to trial as required by Pa.R.Crim.P. 567 ("Rule 567"). At the charging conference, the Commonwealth requested the jury be told Graham violated Rule 567. *See* N.T., 1/25/24, at 130-31. Graham objected to any curative instruction because Graham "testified under the rule itself. He's entitled to testify and that can't be taken out even if notice was given. No alibi was put up witness-wise and no witness was put forth by the defense. . . . No rule was broken by the defense if you look at [Rule 567]." *Id*. The court instructed the jury that it could consider Graham's failure to give alibi notice in deciding whether the Commonwealth proved his guilt beyond a reasonable doubt. *See id*. at 145-46. Graham did not object to the court's instruction.

A jury before the Honorable Giovanni O. Campbell convicted Graham of arson, second-degree murder, causing a catastrophe, and nine counts of recklessly endangering another person ("REAP").[2] The court imposed a mandatory life sentence and concurrent terms of imprisonment for the other

_____

[2] *See* 18 Pa.C.S.A. §§ 3301, 2502(b), 3302(a), 2705.

offenses. Graham timely appealed and he and the trial court complied with Pa.R.A.P. 1925.

On appeal, Graham raises four issues for this Court's review:

1)      Were the verdicts for felony murder . . ., arson . . ., causing a catastrophe . . ., and nine counts of [REAP] . . . not supported by sufficient evidence since there were no eyewitnesses and [Graham] testified he was not present?

2)      Were the verdicts for felony murder . . ., arson . . ., causing a catastrophe . . ., and nine counts of [REAP] . . . against the weight of the evidence?

3)      Did [the trial court] err in allowing [Carter] to testify about a letter [Graham] allegedly sent to him which he lost since he did not timely tell the police, since he lost the letter, and he was not familiar with [Graham's] handwriting, and [Graham] denied sending the letter and the letter was not authenticated? Did the discussion of the contents of the letter prejudice [Graham] since the letter was not authenticated and allegedly contained an admission by [Graham] that the fire was an accident and he did not want [Carter] to testify?

4)      Did [the trial court] err when at the request of the prosecution, [it] gave an instruction to the jury in which [the court] commented on [Graham's] failure to file an [a]libi [n]otice? Was this issue timely preserved by objections to the charge? Did the [trial court] err in his instruction by undercutting the alibi instruction by telling the jury the Commonwealth had the right to investigate an alibi and [Graham] had a duty to tell the specific alibi defense prior to trial when under Rule[] of Criminal Procedure 567(B), the [d]efendant has the absolute right to testimony about his alibi even if no notice was filed? Did this charge improperly comment on [Graham's] right to remain silent? Did this instruction undermine the burden of proof of the Commonwealth which has the burden to disprove an alibi defense? Did the [trial court] err by failing to tell the jury that Rule 567(B) always allow[s] a [d]efendant to testify even if no alibi notice was filed?

Graham's Brief at 6-8.

Graham's first issue asserts the evidence was insufficient to sustain his convictions.

This Court reviews the sufficiency of the evidence under the following standard:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt . . .. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Stahl*, 175 A.3d 301, 303-04 (Pa. Super. 2017) (original emphasis removed). On sufficiency review, evidence is viewed in the light most favorable to the Commonwealth, not the defendant. *See*, *e.g.*, *Commonwealth v. Brunson*, --- A.3d ---, ---, 2025 WL 3088613 at *6 (Pa. Super. 2025); *Commonwealth v. Risoldi*, 238 A.3d 434, 454 (Pa. Super. 2020). In reviewing a sufficiency claim, this Court has also acknowledged that:

> we may not weigh the evidence and substitute our judgment for the fact-[]finder . . .. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Burton***, 234 A.3d 824, 829 (Pa. Super. 2020) (citation omitted). ***See Commonwealth v. Fitzpatrick***, 181 A.3d 368, 374 (Pa. Super. 2018) (stating all evidence is considered in conducting sufficiency review).

A person commits arson, a felony of the first degree, when, *inter alia*, he intentionally starts a fire and thereby recklessly places another person in danger of death or bodily injury. ***See*** 18 Pa.C.S.A. § 3301(a)(1)(i). Arson can be proved with wholly circumstantial evidence. ***See Commonwealth v. Galloway***, 448 A.2d 568, 571 (Pa. Super. 1982).

A person commits second-degree murder when he commits a murder while engaged in the perpetration of a felony. ***See*** 18 Pa.C.S.A. § 2502(b). The malice to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the accused intended physical harm to the victim. ***See Commonwealth v. Dixon***, 276 A.3d 794, 800 (Pa. Super. 2022).

A person commits the crime of causing a catastrophe when, *inter alia*, he causes a catastrophe by fire. ***See*** 18 Pa.C.S.A. § 3302. "Catastrophe" is synonymous with widespread injury or damage. ***See Commonwealth v. Hughes***, 364 A.2d 306, 312 (Pa. 1976).

A person commits REAP if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. ***See*** 18 Pa.C.S.A. § 2705. A person acts recklessly with regard to a material

element of an offense when he consciously disregards a substantial and unjustifiable risk that the material evidence will result from his conduct. The risk "must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involve a gross deviation from the standard of care that a reasonable person would observe[.]" 18 Pa.C.S.A. § 302(b)(3).

Graham states there were no eyewitnesses to the crime and "other evidence was questionable and unreliable and speculative." **See** Graham's Brief at 29. He labels Gladney's video identification of him "highly speculative and conjecture[al]." **See id**. at 31. Graham further argues the letter Carter testified Graham sent him was not properly authenticated. **See id**. at 33. Additionally, Graham cites his own testimony he left the building because Carter allowed homeless people to live there, and he was not present at the time of the fire and denied setting it. **See id**. at 34-39.

The trial court determined the evidence sufficient based upon Graham's access to the house, his departure from the fire scene before the fire became visible, the inculpatory letter he sent to Carter claiming the fire was started accidentally – a theory of origin the fire expert rejected – and his request to Carter that he not testify at trial. **See** Trial Court Opinion, 2/20/25, at 6-8.

The Commonwealth presented evidence of Graham's ill-will with Carter that resulted in his moving out of the rooming house, his presence in the

house shortly before the fire, his capture[3] on video leaving the house shortly before the fire, and the letter he sent to Carter requesting he not testify and asserting the fire was the result of the accidental dropping of a cigarette, a theory of causation the expert eliminated. The evidence thus sustained Graham's convictions. *See* 18 Pa.C.S.A. § 2705; *Dixon*, 276 A.3d at 800; *Burton*, 234 A.3d at 829; *Fitzpatrick*, 181 A.3d at 374; *Galloway*, 448 A.2d at 571; *Hughes*, 364 A.2d at 312.

Graham next asserts a challenge to the weight of the evidence.

As this Court has colorfully framed the standard governing review of a weight claim,

> [t]he finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

_____

[3] Both Graham and Gladney testified he was the person shown on the video.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted).  A boilerplate motion asserting the verdict was against the weight of the evidence does not preserve a weight claim unless it specifies why the verdict was against the weight of the evidence.  *See Commonwealth v. Rivera*, 238 A.3d 482, 496-97 (Pa. Super. 2020).

To preserve a weight claim for appellate review, an appellant must make a motion for a new trial (1) orally, on the record, before sentencing, (2) by written motion before sentencing, or (3) in a post-sentence motion. Pa.R.Crim.P). 607 (A)(1)-(3); *Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa. Super. 2020).

Graham's post-trial motions asserted only that the verdicts "were not supported by the evidence were against the weight of the evidence" [sic]. Graham's Post Trial Motions, 2/5/25, at 2 (unnumbered).  Additionally, his accompanying memorandum of law contained only two paragraphs: one citing the standard of review of a weight claim and the second that read in its entirety: "In the instant matter the evidence introduced by the Commonwealth that the defendant was the substantial cause of the motor vehicle accident [sic] is 'tenuous, vague and uncertain.'"  Graham's Memorandum of Law,

2/5/25, at 2 (unnumbered). Graham therefore waived his weight claim. *See Rivera*, 238 A.3d at 497.[4]

Graham's next issue asserts the trial court abused its discretion by permitting Carter to testify about the letter Graham wrote to him because the letter could not be produced at trial.

An original of a writing is not required and its contents are admissible if any of the following four circumstances are satisfied: (a) the original is lost or destroyed and not by the proponent in bad faith, (b) an original cannot be obtained, (c) the party against whom the document would be offered had control of the original, or (d) the writing is not closely related to a controlling issue. Pa.R.E. 1004. An opposing party's statement is admissible against him. Pa.R.E. 803(25).

Where an original is unavailable, authentication is not at issue. Whether an original is lost or destroyed without the proponent's bad faith is a threshold question is for the court. *See Commonwealth v. Fisher*, 764 A.2d 82, 89-

_____

[4] Even if reviewable, Graham's claim would be meritless. Graham asserts the absence of "direct or strong evidence" of his guilt, that the evidence, including testimony about the letter Graham sent to Carter is "totally unreliable," and Graham is "somewhat unreliable" because he denies operating an illegal rooming house. *See* Graham's Brief at 41-43. The trial court found the jury carefully weighed the evidence and credited the testimony, and the court's conscience is "not at all shocked by th[e] verdicts. To the contrary, the verdicts are consistent with the overwhelming weight of the credible evidence." Trial Court Opinion, 2/20/25, at 8-9. We will not overturn a weight on a credibility challenge. *See Commonwealth v. Carrasquillo*, --- A.3d ---, ---, 2025 WL 2959625 at *3 (Pa. Super. 2025).

90 (Pa. Super. 2000). A jury determines whether the writing existed. Pa.R.E. 1008.

Graham asserts the trial court abused its discretion when it permitted Carter to testify about the letter Graham wrote to him. *See* Graham's Brief at 45-51. He states Carter never mentioned the letter until shortly before trial, the letter – which accused Carter of lying on the witness stand – was not authenticated and is unreliable, and Carter is not an expert on Graham's handwriting. *See id*. at 45-47. He asserts, "Obviously, [Carter] was doing everything to protect himself because he ran an illegal boarding house that apparently did not meet any code standards and he himself could have been implicated at least for severe neglect in the death and problems caused by the fire." Graham's Brief at 47-48. Graham concedes the letter could be admissible as against his interest but asserts the absence of authentication pursuant to Pa.R.E. 901 sufficient to admit the letter into evidence, and refutes waiver by claiming appellate counsel raised the issue when counsel assumed the defense on appeal. *See id*. at 48-51.

The trial court found Graham did not raise a hearsay objection, and even if he had, the statements in the letter would have been admissible as

statements against interest pursuant to Pa.R.E. 804(b)(3). **See** Trial Court Opinion, 2/20/25, at 5 n.2; N.T., 1/22/24, 89-93.[5]

The trial court did not abuse its discretion by admitting Carter's testimony about the letter. The letter is unavailable, and therefore authentication is not properly at issue. Further, Pa.R.E. 1004 permits testimony about a lost writing where it was not lost or destroyed in bad faith. **See** Pa.R.E. 1004(a). Carter's testimony established the letter was lost. Regarding hearsay, the contents of the letter, namely that the fire started accidentally, and Carter lied at the preliminary hearing and should not testify at trial, were not offered for the truth of the matter asserted, and are therefore not hearsay but are evidence of consciousness of guilt. **See Commonwealth v. Rega**, 933 A.2d 997, 1010 (Pa. 2007).[6] The trial court's evidentiary ruling was thus not an abuse of discretion.

Graham's final issue asserts the trial court gave an improper jury instruction about his failure to file a notice of alibi notice. **See** Graham's Brief at 51-66.

_____

[5] For a defendant's statement to be admissible under Pa.R.E. 804(b)(3), the declarant must be unavailable, have had firsthand knowledge, the statement must have been against his interest at the time, and the corroborating circumstances demonstrate reliability. **See** Ohlbaum on Evidence, 2025 Edition at 804-36.

[6] Because the statements were not offered for their truth, we do not perceive a need to address their admissibility as hearsay exceptions under Pa.R.E. 803(25) or 804(b)(3).

To preserve a challenge to a jury instruction, an appellant must have objected to the charge at trial. *See Commonwealth v. Davis*, 273 A.3d 1228, 1245-46 (Pa. Super. 2022). A general objection to a jury charge will not preserve an issue for appeal, specific exception must be taken to the allegedly improper language. *See* Pa.R.A.P. 302(b); *see also* Pa.R.Crim.P. 647(C) (providing that no portion of a jury instruction may be assigned as error unless specific objections are made thereto before the jury retires to begin its deliberations). This rule requiring an objection after the instruction applies even if counsel requested a point of charge and the court denied the request:

> The pertinent rules . . . require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obliging counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate possible error, thereby eliminating the need for appellate review of an otherwise correctable error.

*Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa. Super. 2014), quoting *Commonwealth v. Pressley*, 887 A.2d 220, 224 (Pa. 2005).

A trial court has broad discretion in formulating jury instructions where it presents the law to the jury in a clear, adequate, and accurate manner. *See Commonwealth v. Lukowich*, 875 A.2d 1169, 1174 (Pa. Super. 2005). We review jury instructions for an abuse of discretion or error of law. *See Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa. Super. 2017). Trial courts

are invested with broad discretion in crafting jury instructions, and such instructions will be upheld where they clearly and accurately present the law to the jury. *See Commonwealth v. Simpson*, 66 A.3d 253, 274 (Pa. 2013). A reviewing court considers the entire charge as a whole, rather than isolated fragments, and considers it against the background of all evidence presented to determine whether error is committed, *i.e.*, if the instruction as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury on a material issue. *See Commonwealth v. Grimes*, 982 A.2d 559, 564 (Pa. Super. 2009).

Pennsylvania Rule of Evidence, 567, Notice of Alibi Defense, provides a defendant shall file a notice of alibi defense and serve it upon the Commonwealth; the Rule also provides that if a defendant fails to file and serve it upon the Commonwealth, the court may grant a continuance or "make any such order as the interests of justice require." Pa.R.E. 567(A)-(B).

At the charging conference, the trial court did not state the instruction it would give about Graham's failure to provide alibi notice. Graham asserted he did not violate Rule 567 because the rule permitted him to testify without such notice. The trial court then instructed the jury Graham had presented evidence of alibi the jury was required to consider in assessing whether the Commonwealth proved his guilt beyond a reasonable doubt. *See* N.T., 1/24/24, at 148. It further instructed:

> [t]he rules of criminal procedure require prior notice of an alibi defense so that the Commonwealth may investigate the merits of

- 15 -

it. Here[,] the defense gave no notice that there was an intent to present evidence of alibi. You should not disbelieve the defendant's alibi defense merely because he failed to give prior notice; however, you may consider this failure along with all other evidence in the case in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt.

*Id*. at 148-49. Graham did not object to the trial court's instruction.

Graham asserts the trial court's instruction concerning his alibi was deficient and unfair because a defendant is permitted to testify to an alibi even if he fails to provide notice under Pa.R.Crim.P. 567(B) ("Rule 567"). *See* Graham's Brief at 54-55. Graham faults the court for failing to tell the jury he had an absolute right to give alibi testimony without advance notice, and, further, the court's instruction allowed the jury to consider the failure to give notice in assessing guilt; he also asserts his right to silence was implicated. *See id*. at 55-57, 52-63.[7] Graham discusses at length the law on the importance of an alibi instruction. *See id*. at 60-62. Graham acknowledges that in *Commonwealth v. Servich*, 602 A.2d 1338 (Pa. Super. 1992), this Court held that the lack of alibi notice prejudices the Commonwealth and the trial court has broad discretion to select a remedy, but asserts here the court allowed the jury to consider the lack of notice against him, and "[t]he *Servich* language is wrong because it ignored the exception now found in Rule 567(B)"

_____

[7] Though Graham asserts no separate claim of prosecutorial misconduct, he asserts the prosecutor's closing argument highlighted the impact of the instruction. *See id*. at 58-59.

that Graham had the right to testify with or without alibi notice. ***See id***. at 63-65.[8]

The trial court found Graham violated Rule 567 by failing to give advance notice of his alibi defense. ***See*** Trial Court Opinion, 2/20/25, at 5-6. It held that its instruction was within its broad discretion to address Graham's violation of Rule 567.

Graham violated Rule 567 by failing to give advance notice of alibi, as the rule requires. The trial court did not err in so instructing. Although Graham asserts on appeal the trial court's instruction constituted improper burden shifting, he made no objection when the court gave the instruction he now challenges. Accordingly, he waived that claim. ***See*** Pa.R.A.P. 302(b); Pa.R.Crim.P. 647(C); ***Davis***, 273 A.3d at 1246; ***Parker***, 104 A.3d at 29.

Judgment of sentence affirmed.

---

[8] Graham concludes by distinguishing an unpublished case decided before May 1, 2019, which cannot be considered for any purpose. ***See id***. at 65-66. ***See*** 210 Pa. Code § 65.37B (providing an unpublished opinion before May 2, 2019, shall not be relied upon or cited by a Court or a party. ***See also Delavern v. Health Services of Clarion, Inc.***, 334 A.2d 356 (Pa. Super. 2025) (unpublished memorandum at *14) ("admonish[ing]" counsel that memorandum opinions before May 2, 2019, "may not be cited for any purpose").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/27/2026